Thomas A. ENGLISH et al.

v.

Kenneth D. GREEN et al.

Bruno Formato

v.

Kenneth D. Green et al.

No. 99–548–Appeal.

Supreme Court of Rhode Island.

Dec. 21, 2001.

Donald A. Woodbine, James A. Bigos, for plaintiff.

Michael R. DeLuca/Paul S. Callaghan, Virginia M. McGinn, Providence, for defendant.

BEFORE: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

WILLIAMS, Chief Justice.

The defendants, Kenneth D. Green (Green), Paul Green and Rocchio & Sons, Inc. (Rocchio) (collectively referred to as defendants) appeal the grant of a new trial in favor of plaintiffs Thomas A. English (English) and Bruno Formato (Formato) (collectively referred to as plaintiffs) after a jury failed to assign any degree of negligence to Green for his contribution to an automobile accident. The trial justice determined that the jury's apportionment of negligence was against the fair weight of the evidence, failed to do substantial justice to the parties, and that the damage awards shocked the conscience of the court. After hearing the arguments of

counsel and examining the memoranda submitted in this case, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

On the evening of January 8, 1993, the parties were involved in an automobile accident at the intersection of Smith and Gaspee Streets in the City of Providence. The plaintiffs were traveling eastbound on Gaspee Street in an automobile driven by Nicholas Papakyrikos (Papakyrikos). Rocchio earlier had done construction work at the site. A stop sign that usually controlled the flow of traffic at the intersection had been removed temporarily to permit the construction work. Because Papakyrikos was unfamiliar with the area, he did not realize that he was required to stop at Smith Street. When he reached the middle of the intersection, however, he realized his mistake and stopped the car in the first southbound lane of Smith Street. At that moment, he saw a pair of headlights approaching the intersection. Papakyrikos attempted to drive from his position of peril, in an unsuccessful attempt to avoid a collision with Green's automobile.[1] The impact of the collision caused Papakyrikos's automobile to turn 180 degrees and come to rest on the sidewalk adjacent to the northbound lane.

Seeking to recover damages for their alleged personal injuries, plaintiffs English and Formato filed two separate actions, each naming Kenneth Green, Paul Green, and Rocchio as defendants.[2] The cases were consolidated on January 13, 1997.

At trial, Papakyrikos's deposition was read to the jury. He estimated that Green's automobile was traveling "around [forty] miles an hour" when it entered the intersection. English, who sat in the front seat of Papakyrikos's automobile, testified that Green's vehicle was going approximately thirty miles per hour. Formato, who was in the back seat, stated "[i]t seemed like it was about [forty] miles an hour, [thirty-five], [forty]." John Snedeker (Snedeker), also a passenger in the back seat of Papakyrikos's automobile, testified by deposition that he thought Green's vehicle approached the intersection at a "very excessive rate of speed." Green testified that he had been watching his speedometer before the accident and that despite the area's speed limit of twenty-five miles per hour, he was traveling thirty miles per hour. He also admitted that he was familiar with the intersection and aware that the stop sign had been missing for several weeks.

At trial, English's counsel read aloud the deposition of Lester Sheehan, M.D. (Dr. Sheehan). Doctor Sheehan testified that he had treated English in 1991 for shoulder injuries. At that time, English was diagnosed with "rotator cuff tendonitis [ ] impingement" in both shoulders, although the injury to his right shoulder was more severe. Doctor Sheehan prescribed conservative treatment and instructed English to come back on an "as-needed basis." Doctor Sheehan testified he did not treat English again until January 1993, after the accident. He then diagnosed English with rotator cuff tendonitis in his left shoulder as a result of the accident. Almost two years later, Dr. Sheehan recorded that "[English] seemed to be complaining of more pain than I could give satisfactory explanation for based on the examination

---

**1.** Green's automobile was driven by Kenneth Green and owned by Paul Green.

**2.** Originally, there were several other defendants, all of whom are no longer parties.

of his shoulder." Consequently, he recommended and did surgery on English's left shoulder. Doctor Sheehan testified that, although ultimately not beneficial, the surgery was necessary to treat English's pain. Doctor Sheehan was unable to say, with any degree of medical certainty, however, whether the shoulder injury was caused by the automobile accident or by English's employment as a tile setter.

In contrast, defendants called A. Louis Mariorenzi, M.D. (Dr. Mariorenzi), an orthopedic surgeon, to testify as an expert witness. Doctor Mariorenzi testified that he had reviewed English's pertinent medical records and also had conducted a physical examination of English, in October 1998. Doctor Mariorenzi testified that English failed to disclose to him his preexisting shoulder injury. Doctor Mariorenzi also opined that the rotator cuff surgery done by Dr. Sheehan had been necessitated by a "preexisting condition which was really arthritis."

After the trial, a Superior Court jury apportioned negligence between the various defendants as follows: Papakyrikos, 75 percent; Rocchio, 15 percent; the State of Rhode Island, 10 percent; and Green, 0 percent.

Although they recovered the apportioned damages from Rocchio, plaintiffs nevertheless filed a motion for new trial, arguing that the jury verdict failed to respond to the merits of the controversy because of the overwhelming evidence pointing to Green's negligence and because of the disparity between the damage awards and plaintiffs' medical expenses. The trial justice granted plaintiffs' motion. In doing so, she concluded that Green's testimony alone "compels the conclusion that he was negligent that night." Moreover, the trial justice found that the jury's

assessment of damages shocked the conscience of the court because the awards were so disproportionately lower than the amount of medical bills that had been introduced in evidence. The defendants timely appealed.

## II

### Motion for New Trial

■ In considering a motion for new trial, the trial justice functions as a "superjuror." *Long v. Atlantic PBS, Inc.,* 681 A.2d 249, 254 (R.I.1996) (citing *Barbato v. Epstein,* 97 R.I. 191, 193–94, 196 A.2d 836, 837 (1964)). If the trial justice:

"reviews the evidence, comments on the weight of the evidence and the credibility of the witnesses, and exercises his [or her] independent judgment, his [or her] determination either granting or denying a motion for new trial will not be disturbed unless he [or she] has overlooked or misconceived material and relevant evidence or was otherwise clearly wrong." *Kurczy v. St. Joseph Veterans Association, Inc.,* 713 A.2d 766, 770 (R.I. 1998) (quoting *Pantalone v. Advanced Energy Delivery Systems, Inc.,* 694 A.2d 1213, 1216 (R.I.1997)).

The defendants argue that the trial justice erred in granting plaintiffs' motion for new trial because the jury verdict was supported by competent evidence. We disagree.

In the instant case, we conclude that the trial justice did not misconceive or overlook material evidence by finding that reasonable minds would certainly agree that Green was at least partly negligent. Green, by his own admission, she noted, failed to enter the intersection with caution, despite knowing that the stop sign was missing.

He also had testified that he was traveling in excess of the speed limit when the accident occurred. Snedeker confirmed that Green was traveling at a "very excessive" speed. Similarly, the other witnesses placed Green's speed within the range of forty miles per hour. Finally, the evidence disclosed that the impact of the collision was so severe as to turn Papakyrikos's automobile 180 degrees. The trial justice also found Green's testimony that he was driving thirty miles per hour incredible because "[v]irtually, all other witnesses to the accident testified that he was driving 'very fast' or [forty] to [fifty] miles per hour." The trial justice, sitting as the seventh juror, concluded that Green's testimony, as a whole, was "totally lacking in credibility."

■ The trial justice's granting of the motion for new trial also was based upon her conclusion that "the evidence did not support the jury's assessment of damages." This Court has held that "a damage award may be disregarded by the trial justice and a new trial granted only if the award shocks the conscience or indicates that the jury was influenced by passion or prejudice or if the award demonstrates that the jury proceeded from a clearly erroneous basis in assessing the fair amount of compensation to which a party is entitled." *Dilone v. Anchor Glass Container Corp.*, 755 A.2d 818, 820–21 (R.I. 2000) (quoting *Shayer v. Bohan*, 708 A.2d 158, 165 (R.I.1998)).

In this case, the trial justice noted that the jury's award of only $12,000 to Formato was "against the fair preponderance of the evidence, and does not do substantial justice between the parties and shocks the conscience of this [c]ourt" because Formato, in her opinion, clearly was entitled to a higher damage award. The trial justice

found "compelling [Formato's] uncontradicted testimony as to his pain and suffering and the restrictions that his injuries have placed on his day-to-day activities." She noted also that the evidence showed Formato had incurred $9,900 in lost wages and medical expenses. Moreover, she considered that Formato "suffered * * * a continuing and permanent impingement injury to his shoulder." The trial justice, sitting as the "superjuror," then determined that the damages awarded to Formato by the jury were wholly inadequate because of his compelling, credible testimony concerning his pain and suffering and permanent injury. Similarly, the trial justice stated that "[r]easonable minds could not have concluded that [English] was entitled [only] to $10,000 in damages where credible evidence proved $26,000 in medical expenses for a permanent injury."

As the seventh juror, the trial justice has the right to disagree with the jury's award, if the award shocks the conscience of the court. We accord great deference to that finding. Although the trial justice, in evaluating the expert testimony, did not expressly discredit Dr. Mariorenzi, who testified that English's injury was preexisting, her findings and discussion of the damage awards make clear that she did not accept Dr. Mariorenzi's assessment of English's injuries. We conclude the trial justice did not err in determining that the jury's damage awards to English and Formato were totally unresponsive to the evidence.

■ The defendants Kenneth and Paul Green also contend that even if the jury had found that Green was driving in a negligent manner, they may have concluded simply that his negligence was not the proximate cause of the accident. The defendants point to the jury form, which

contained a compounded interrogatory asking: "Do you find that Plaintiffs English and Formato have proven, by a fair preponderance of the credible evidence, that Defendant Green was negligent and that such negligence was a proximate cause of the accident?" The jury responded in the negative. Thus, defendants argue the trial justice's conclusion that Green must have been liable is incorrect. We disagree.

 "It is well settled that in order to gain recovery in a negligence action, a plaintiff must establish * * * proximate causation between the conduct and the resulting injury, and the actual loss or damage." *Jenard v. Halpin*, 567 A.2d 368, 370 (R.I.1989) (citing *Atlantic Home Insulation, Inc. v. James J. Reilly, Inc.*, 537 A.2d 126, 128 (R.I.1988)). "[P]roximate cause is established by showing that but for the negligence of the tortfeasor, injury to the plaintiff would not have occurred." *Skaling v. Aetna Insurance Co.*, 742 A.2d 282, 288 (R.I.1999) (citing *Fondedile, S.A. v. C.E. Maguire, Inc.*, 610 A.2d 87, 95 (R.I. 1992)).

 Arguably, the jury may have found that Green was only partly negligent, but that his negligence was not a proximate cause of the collision, and thus, exculpated him. This Court, while troubled by the trial justice's failure to explain the relationship between a defendant's negligence and proximate cause, is able to imply from the trial justice's reasoning in granting a new trial that she found Green's negligence to have been a proximate cause of the accident. She discussed, at length, Green's failure to reduce his speed at the intersection despite knowledge of the missing stop sign, and her description of the severe injuries suffered by each of the plaintiffs implies that she found that the impact caused by Green's vehicle was the proximate cause of plaintiffs' injuries. Thus, there is sufficient evidence suggesting the trial justice determined that Green's negligence was a proximate cause of the accident, and that the plaintiffs' injuries proximately resulted therefrom.

In the future, however, we caution against the use of compounded and confounding juror interrogatories addressing liability and causation in the same question. The better practice is to address each element in a separate interrogatory, asking first, whether the jury found negligence, and if so, in a separate question, whether that negligence proximately caused the accident.

For the foregoing reasons, the defendants' appeal is denied and dismissed. The judgment of the Superior Court is affirmed. The papers in the case are returned to the Superior Court.