George SABER

v.

DAN ANGELONE CHEVROLET, INC.

No. 2000–361–Appeal.

Supreme Court of Rhode Island.

Dec. 17, 2002.

Jeffrey D. Sowa, Providence, Sarah McConnell Dubois, for Plaintiff.

Joseph C. Salvadore, for Defendant.

Before WILLIAMS, C.J., LEDERBERG, FLANDERS, and GOLDBERG, JJ.

## OPINION

WILLIAMS, Chief Justice.

In this case, the defendant, Dan Angelone Chevrolet, Inc. (defendant), appeals

from a Superior Court judgment, challenging several rulings made by the trial justice. Before closing arguments, the trial justice determined as a matter of law that the defendant, a Rhode Island corporation, breached the warranty of title of a car sold to the plaintiff, George Saber (plaintiff), a resident of the Commonwealth of Massachusetts. The jury found that the plaintiff provided the defendant with sufficient notice of the breach and awarded the plaintiff damages in the amount of $14,900. On appeal, the defendant alleges that the trial justice committed a variety of errors. For the reasons set out below, we deny and dismiss the defendant's appeal and affirm the trial justice's rulings.

## I

### Facts and Travel

On February 7, 1990, plaintiff bought a used 1985 Chevrolet Corvette (Corvette or car), from defendant for $14,900. The Corvette was red, had an automatic transmission, and its odometer said 34,744 miles. At that time plaintiff also purchased an extended warranty to cover certain problems that might arise with the car. Between March 1990 and April 1992, plaintiff experienced several mechanical problems with the car and brought it to defendant for service. Because of the series of problems he was experiencing, plaintiff decided to research the car's history. In conducting a title search on the car, he discovered that a title application for the Corvette described it as black and equipped with a manual transmission. In light of his discovery, plaintiff, through an attorney, contacted the Massachusetts State Police (state police).

In response to plaintiff's call, state police Lieutenant Joseph Costa (Lt. Costa) examined the Corvette and discovered some discrepancies with respect to its vehicle identification number (VIN) and major components. The plate located on the window downpost, which contained the VIN, was blistered and painted over. Additionally, derivative identification numbers on the car's frame, engine and transmission did not correspond to the VIN on the window downpost. Further, a Mylar sticker, which is typically located on the door of the car and also has the same VIN as the window downpost, was missing. Finally, the Corvette was equipped with a third brake light, which was manufactured one year after the car supposedly was manufactured. Based on those observations, Lt. Costa believed that some of the car parts were stolen.

After the inspection, plaintiff drove the Corvette home. The next day, plaintiff drove the car to the North Dartmouth barracks of the state police. There, he voluntarily left the car in the parking lot, dropped off the keys and took a ride home from an employee. Lieutenant Costa testified that the car was impounded and that plaintiff could not have it back.

Later, the Corvette was delivered to Danny's Autobody, a privately owned business located in New Bedford, Massachusetts, that the state police used as an impound facility. A subsequent investigation revealed that the Corvette was neither stolen nor composed of stolen parts. Rather, according to defendant's brief, the Corvette was destroyed in a fire and subsequently rebuilt using parts from various other cars. The frame was replaced with one from an "identical type" car, the motor was replaced, the engine block was taken from a Chevrolet Camaro and the car was painted red. According to defendant, it received the Corvette in its current, refurbished condition as a trade-in and later sold it to plaintiff. None of those facts were disclosed to plaintiff when he purchased the car, and it is not clear whether

defendant was aware of them when it sold the Corvette to plaintiff.

In 1992, plaintiff filed a lawsuit against defendant in Massachusetts District Court, which later was dismissed for lack of jurisdiction. In 1995, plaintiff filed the instant action in Superior Court seeking damages for negligence and breach of contract. The plaintiff's amended complaint added counts for deceptive trade practices, misrepresentation, revocation of acceptance, and violations of the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301–2312, but did not expressly allege breach of warranty of title. To support his claim for negligence, however, plaintiff alleged in his complaint that he was not given good title to the car.

The trial began in April 2000. At the close of plaintiff's case, defendant moved for judgment as a matter of law, arguing that there could be no breach of the warranty of title because the car was not stolen. The trial justice, however, denied defendant's motion, stating that the warranty of title may be breached by law enforcement impoundment. Before closing arguments, both parties moved for judgment as a matter of law. The trial justice determined that, based on Lt. Costa's testimony, the car was impounded and because of that impoundment, defendant breached the warranty of title owed to plaintiff. The trial justice granted plaintiff's motion on that issue. The trial justice, however, charged the jury with the task of determining whether plaintiff provided defendant with sufficient notice of the breach as required under G.L.1956 § 6A–2–607. The jury returned a verdict in plaintiff's favor. The defendant later renewed its motion for judgment as a matter of law and moved for a new trial. Both motions were denied. The defendant timely appealed.

## II

### Judgment as a Matter of Law

■ Under Rule 50(a)(1) of the Superior Court Rules of Civil Procedure, a trial justice presiding over a jury trial may grant a party's motion for judgment as a matter of law if "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." When ruling on a Rule 50 motion the trial justice:

> " 'considers the evidence in the light most favorable to the nonmoving party, without weighing the evidence or evaluating the credibility of witnesses, and draws from the record all reasonable inferences that support the position of the nonmoving party. * * * If, after such a review, there remain factual issues upon which reasonable persons might draw different conclusions, the motion for [judgment as a matter of law] must be denied, and the issues must be submitted to the jury for determination.' *DeChristofaro v. Machala*, 685 A.2d 258, 262 (R.I.1996).

> "In reviewing a trial justice's decision on a motion for judgment as a matter of law, this Court 'is bound by the same rules and [standards] as the trial justice.' *Hoffman v. McLaughlin Corp.*, 675 A.2d 404, 405 (R.I.1996)." *Mellor v. O'Connor*, 712 A.2d 375, 377 (R.I.1998).

The defendant argues that the trial justice erred in granting plaintiff's motion for judgment as a matter of law for three reasons. First, defendant claims that the trial justice unfairly allowed plaintiff to amend his complaint to establish liability for breach of warranty of title based on the fact that the Corvette was impounded. Second, defendant challenges the trial justice's finding that the car was indeed impounded. Finally, according to defendant, even if the car was impounded, the trial

justice erred in finding that the impoundment constituted a breach of warranty of title. We conclude that each of defendant's claims are without merit and address each *seriatim*.

## A

### "Amendment" of Plaintiff's Complaint

■ The defendant argues that the trial justice erred in granting plaintiff's motion for judgment as a matter of law [1] because the trial justice predicated his decision on a theory that was not properly raised in plaintiff's complaint. According to defendant, allowing plaintiff to proceed on the "new" theory constituted an unfair amendment of plaintiff's complaint.[2]

We begin by noting that it is undisputed that plaintiff never specifically included a separate count for breach of warranty of title in his amended complaint. Further, plaintiff never formally asked to amend his complaint to include a separate count for breach of warranty of title and, accordingly, the trial justice never granted plaintiff permission to so amend his complaint. In any event, we need not consider whether an amendment was either necessary or proper in this situation because the record reveals that defendant did not object to plaintiff's theory of the case, that impoundment constitutes a breach of the warranty of title, until after the jury was charged

and returned its verdict. Under Rule 15(b) of the Superior Court Rules of Civil Procedure, "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Failure to amend the pleadings to conform to litigated issues that were not properly pleaded "does not affect the result of the trial of these issues." *Id.*

The defendant did not lodge an objection on these grounds during plaintiff's case, its own case or after the trial justice's rulings on the parties' Rule 50 motions.[3] When the trial justice denied defendant's motion for judgment as a matter of law at the close of plaintiff's case, he specifically held that "the warranty of title of the Uniform Commercial Code subsumes a quiet enjoyment which can be disturbed by law enforcement impoundment." By failing to object, defendant impliedly consented to litigation of that issue at trial. *See Fram Corp. v. Davis,* 121 R.I. 583, 591, 401 A.2d 1269, 1274 (1979).

## B

### Impoundment

■ Next, defendant argues that the trial justice erred in finding that the Corvette was impounded. A car is impounded

---

**1.** The defendant's brief does not make clear whether defendant is challenging the trial justice's denial of its motions for judgment as a matter of law or the trial justice's grant of plaintiff's motion for the same. The defendant's lack of clarity, however, is excused because we hold that the issue of impoundment was tried by the implied consent of the parties.

**2.** According to defendant, plaintiff never put defendant "on 'fair and adequate notice' that 'the type of claim being asserted' was one of breach of warranty of title due to vehicle dispossession, relinquishment and/or im-

poundment. * * * Had [defendant known] this would be an issue in the case it would have conducted discovery addressing the breach of warranty of title issue."

**3.** It is interesting to note that defendant's brief quotes the trial justice as having said: "But, the defendant did object once a proper witness offered the testimony * * *." The trial justice, however, actually said: "But, the defendant *didn't* object once a proper witness offered that testimony." (Emphasis added.) We trust that this was an honest mistake that will not be repeated in the future.

if it is placed "in the custody of the police or the court." ·Black's Law Dictionary 760 (7th ed.1999).

The trial justice found it undisputed that "law enforcement authorities of the Commonwealth of Massachusetts * * * impounded [the Corvette]." At trial, Lt. Costa testified that after he inspected the car, he suspected that it was composed of stolen parts. Lieutenant Costa further testified that, based on his suspicion, the car was seized and impounded and that plaintiff could not have it back.

According to defendant, because plaintiff voluntarily relinquished custody of the Corvette to the state police, the car never was impounded. We deem that argument unpersuasive. Lieutenant Costa testified that plaintiff's consent was irrelevant to the impoundment. We agree that plaintiff's failure to oppose the impoundment in this case should have no impact on the trial justice's finding. The defendant did not offer any testimony to contest the fact that plaintiff was dispossessed of the car by the state police. In fact, the state police still possessed the car at the time of the trial. Based on the facts presented at trial, there was no dispute that the car was impounded and the trial justice did not err in so finding.

## C

### Breach as a Matter of Law

■ Under § 6A–2–312(1) of the Rhode Island Uniform Commercial Code (UCC), "there is in a contract for sale a warranty by the seller that: (a) [t]he title conveyed shall be good, and its transfer rightful." The UCC does not define "good title." Thus, to determine what is required of a seller to convey "good title" under § 6A–2–312(1)(a), we apply our well settled canons of statutory construction.

" 'Generally when a statute expresses a clear and unambiguous meaning, the task of interpretation is at an end and this [C]ourt will apply the plain and ordinary meaning of the words set forth in the statute.' *State v. Bryant,* 670 A.2d 776, 779 (R.I.1996). However, when the statutory language is ambiguous, 'the primary object of the [C]ourt is to ascertain the legislative intention from a consideration of the legislation in its entirety, viewing the language used therein in the light, nature, and purpose of the enactment thereof.' *Mason v. Bowerman Bros., Inc.,* 95 R.I. 425, 431, 187 A.2d 772, 776 (1963) * * *." *Pierce v. Pierce,* 770 A.2d 867, 871 (R.I.2001).

The term "good title" as it is used in § 6A–2–312(1)(a) is ambiguous. The UCC does not provide whether a seller's obligation under § 6A–2–312(1)(a) is limited to transferring legally valid title or whether "good title" assumes some other associated qualities.

■ Unlike most other statutory enactments, the UCC is accompanied by official commentary. "While these comments are not controlling authority and may not be used to vary the plain language of the [UCC], * * *" they are useful for determining the purpose of its provisions and ascertaining the intent of its drafters. *Jefferson v. Jones,* 286 Md. 544, 408 A.2d 1036, 1039 (1979). Official comment 1 to § 6A–2–312 declares that one of the purposes of the warranty of title is to provide "for a buyer's basic needs in respect to a title which he in good faith expects to acquire by his purchase, namely, that he receive a good, clean title transferred to him * * * so that he will not be exposed to a lawsuit in order to protect it." That comment goes on to state that the warranty of quiet possession is abolished, but that a "[d]isturbance of quiet possession * * * is one way, among many, in which the

breach of the warranty of title may be established." *Id.*

The language in official comment 1 evidences the General Assembly's intent to allow a buyer to establish a breach of warranty of title even if a seller did indeed deliver legally valid title. Without ruling on the official comment's abolition of the warranty of quiet possession, we do adopt its position that a buyer may establish a breach of warranty of title by showing a disturbance of quiet possession. After reading the official comment we conclude that disturbance of quiet possession does not depend on a buyer's ability to show that a seller transferred legally invalid title. Were we to limit the scope of § 6A–2–312 to those situations where title lawfully rested in a third party, buyers would be attempting to *establish,* rather than *protect,* their title and the language in official comment 1 would be rendered nugatory. Thus, the General Assembly apparently intended to "provide a remedy for the buyer who successfully defends a title suit." James J. White & Robert S. Summers, *Uniform Commercial Code,* § 9–12 at 536 (4th ed.1995).

There is, however, a split of authority concerning the scope of the warranty of title. *C.f. Jefferson,* 408 A.2d at 1039–40 (holding that proof of superior title in third party is not required to establish breach of warranty of title); *American Container Corp. v. Hanley Trucking Corp.,* 111 N.J.Super. 322, 268 A.2d 313, 318 (Ch.Div. 1970) ("The mere casting of a substantial shadow over his title, regardless of the ultimate outcome, is sufficient to violate a warranty of good title."); *Colton v. Decker,* 540 N.W.2d 172, 176 (S.D.1995) (holding that a seller breached its warranty of title by selling buyer a truck with conflicting vehicle identification numbers that was seized by the police under the mistaken belief that it was stolen) *with C.F. Sales,*

*Inc. v. Amfert, Inc.,* 344 N.W.2d 543, 555 (Iowa 1983) (holding that warranty of title is not breached unless superior title is established in a third party). We conclude that we are giving effect to the General Assembly's stated intention by aligning ourselves with those jurisdictions that allow a buyer to establish breach of warranty of title if a substantial shadow is cast over a title, even if the buyer's title ultimately is proven to be legally valid.

By adopting this position, we do acknowledge that "there is some point at which [a] third party's claim against the goods becomes so attenuated that we should not regard it as an interference against which the seller has warranted." White & Summers, § 9–12 at 537. Here, the car and its parts were not stolen and defendant did indeed have and deliver a legally valid title to plaintiff. We are satisfied, however, that under the facts in this case, the claim made against plaintiff's car—the state police's impoundment—was not too far attenuated. Lieutenant Costa's inspection of the Corvette revealed that it had contradicting VINs and a missing Mylar sticker. Based on those facts Lt. Costa reasonably, albeit mistakenly, believed that the car was composed of stolen parts, and therefore impounded it. By doing so, the state police called plaintiff's ownership into question, thereby "casting * * * a substantial shadow over his title." *American Container Corp.,* 268 A.2d at 318.

The Corvette in this case reminds us of a passage attributed to Abraham Lincoln when he asked, "[h]ow many legs does a dog have if you count his tail as a leg? Four. You can call a tail a leg if you want to, but that doesn't make it a leg." Just as a dog's tail is not a leg, this car is not a typical 1985 Corvette. Although defendant argues that the car is a 1985 Corvette, the car has several "unique" qualities that distinguish it from most other

1985 Corvettes. Without knowing the colorful past associated with this car, plaintiff could not get the benefit of his bargain when he made his purchase. The Corvette was rebuilt after having previously been declared a total loss because of fire damage. Various parts were replaced from an assortment of other vehicles. Vehicle identification numbers embossed on certain parts did not correspond to one another. We conclude that those distinctive characteristics associated with the car and its title would lower its value in the eyes of a reasonably prudent purchaser. By imposing liability for breach of warranty of title in this scenario, the trial justice allayed buyers' fears of encountering a similar situation. Thus, we uphold the trial justice's ruling that defendant breached the warranty of title.

## III

### Evidentiary Rulings

■ The defendant also argues that the trial justice erred by admitting evidence of repairs made on the Corvette. "It is well established that 'the admissibility of evidence is within the sound discretion of the trial justice, and this Court will not interfere with the trial justice's decision unless a clear abuse of that discretion is apparent.'" *ADP Marshall, Inc. v. Brown University*, 784 A.2d 309, 314–15 (R.I.2001) (quoting *Bourdon's, Inc. v. Ecin Industries, Inc.*, 704 A.2d 747, 758 (R.I. 1997)). This standard also applies to a trial justice's determinations about the relevancy of proffered evidence. *See id.* at 315 (citing *Bourdon's, Inc.*, 704 A.2d at 758).

■ Having examined the evidence about the repairs and the context in which it was admitted, we conclude that the trial justice did not abuse his discretion in admitting that evidence. The plaintiff testified about a number of problems with the car, including leaking engine oil and transmission fluid, engine knocks and noises when steering. The plaintiff made several allegations in his complaint relating to his claims for breach of warranty of merchantability and revocation of acceptance. Additionally, plaintiff sought incidental and consequential damages in connection with his claim for revocation of acceptance. One of defendant's affirmative defenses was statute of limitations. The cost and effort to repair the problems was relevant to a calculation of incidental and consequential damages under § 6A–2–715 in the event that liability was established. Thus, the trial justice did not abuse his discretion in admitting evidence of those problems and repairs.

## IV

### Motion for a New Trial

■ "It is well established that the trial justice acts as a 'superjuror' in considering a motion for a new trial. *English v. Green*, 787 A.2d 1146, 1149 (R.I.2001). * * * Therefore, if the trial justice: 'reviews the evidence, comments on the weight of the evidence and the credibility of the witnesses, and exercises his * * * independent judgment, his * * * determination either granting or denying a motion for new trial will not be disturbed unless he * * * has overlooked or misconceived material and relevant evidence or was otherwise clearly wrong.' *Id.* (quoting *Kurczy v. St. Joseph Veterans Association, Inc.*, 713 A.2d 766, 770 (R.I.1998)). If the trial justice determines that the evidence is evenly balanced or that reasonable minds could differ on the verdict, he should not disturb the jury's decision." *Rezendes v. Beaudette*, 797 A.2d 474, 477–78 (R.I.2002).

■ After the trial justice determined that defendant breached the warranty of

title as a matter of law, he explained to the parties that the only remaining issue was whether plaintiff provided defendant with reasonable notice of the breach under § 6A–2–607(3).[4] The defendant now argues that there was insufficient evidence for the jury to find that plaintiff provided defendant with sufficient notice of the breach of warranty of title.

The plaintiff testified that he called defendant on the telephone to give him notice that he considered the warranty breached. Although plaintiff later testified on cross-examination that his attorney, rather than plaintiff personally, was the one who called defendant, the combination of testimony was evidence that defendant received notification that it breached the warranty owed to plaintiff. Indeed, defendant substantiated plaintiff's claim when Dan Angelone, the defendant's owner, acknowledged that he did receive a phone call from plaintiff's attorney, even though he stated that he could not recall the contents of the conversation. Thus, the trial justice did not overlook or misconceive material or relevant evidence in rejecting defendant's motion. He commented on the evidence adduced at trial and discussed what he perceived were potential problems. Noting his concerns with plaintiff's credibility, the trial justice determined that it was the jury's function to resolve those issues. If the jury believed plaintiff, there was sufficient evidence to satisfy the notice requirement.[5]

## V

### Jury Instructions

■■■■■ The defendant assigns six errors to the trial justice's jury instructions.

In reviewing a challenged jury instruction, we examine the charge "in its entirety, 'in light of the meaning and interpretation that a jury composed of ordinary, intelligent lay persons would give [to the instructions].'" *Patino v. Suchnik,* 770 A.2d 861, 866 (R.I.2001) (quoting *Neri v. Nationwide Mutual Fire Insurance Co.,* 719 A.2d 1150, 1153 (R.I.1998)). "An erroneous charge warrants reversal only if it can be shown that the jury 'could have been misled' to the resultant prejudice of the complaining party." *Id.* (quoting *Brodeur v. Desrosiers,* 505 A.2d 418, 422 (R.I. 1986)).

■■■■ Rule 51(b) of the Superior Court Rules of Civil Procedure, however, provides that "[n]o party may assign as error the giving or the failure to give an instruction unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the party's objection." The purpose of "this rule is to allow the trial justice an opportunity to make any necessary corrections to his or her instructions before the jury begins its deliberations. * * * Compliance with this rule is a 'mandatory precondition' to preserving an objection to the jury instructions." *Parrella v. Bowling,* 796 A.2d 1091, 1101 (R.I.2002) (quoting *DiFranco v. Klein,* 657 A.2d 145, 147 (R.I.1995)).

The record reveals that defendant properly objected to only two aspects of the jury instructions. Accordingly, defendant's arguments pertaining to the remaining four alleged errors are waived. *See id.*

---

4. "Where a tender has been accepted: (a) The buyer must within a reasonable time after he or she discovers or should have discovered any breach notify the seller of [the] breach or be barred from any remedy * * *." G.L.1956 § 6A–2–607(3)(a).

5. The defendant enumerates eight other reasons why the trial justice allegedly erred in denying his motion for a new trial. Because those additional claims are wholly without merit, we need not address them.

The first preserved objection concerns the trial justice's instruction about breach of warranty of title because of the impoundment. As discussed above, that instruction was a correct statement of the law and was not erroneous. The second preserved objection relates to the trial justice's instruction that if liability were established, the damages would be $14,900. At trial, defendant appeared to argue that plaintiff was not damaged or, alternatively, that damages were "speculative."

We conclude that the defendant's grounds for objection argued at trial are unpersuasive. First, the plaintiff was dispossessed of the car for which he paid the defendant $14,900. During the trial, the defendant's attorney acknowledged that the defendant had not taken any steps to have the car returned to the plaintiff. The plaintiff was clearly damaged by the defendant's nonfeasance, which contributed to the plaintiff's extended dispossession of the car. Second, the fact that the Corvette in this case was composed of parts taken from so many other vehicles makes it difficult, if not impossible, to ascertain an alternative value of the car that plaintiff actually purchased from defendant. More-over, the defendant has failed to present any evidence to establish the value of the car in its hybrid condition or any benefit inuring to the plaintiff from his temporary use of the car. In light of these facts, we hold that this is a "special circumstance []" under § 6A–2–714(2)[6] and that the trial justice correctly directed the jury that if they found for the plaintiff, the damages would be $14,900, the purchase price. Any possible prejudice to the defendant will be avoided by reverting title of the car to the defendant.

### Conclusion

For the foregoing reasons, the defendant's appeal is denied and dismissed. The judgment of the Superior Court is affirmed. Upon satisfaction of the judgment, title of the car shall revert to the defendant. The papers may be returned to the Superior Court.

---

**6.** Section 6A–2–714(2) allows for deviation from the typical measure of damages for breach of warranty in "special circumstances."