**GBM Acquisitions, Inc.**

v.

**Susan ADAMS d/b/a The Waterfront Café.**

**No. 2002–252–Appeal.**

Supreme Court of Rhode Island.

June 2, 2003.

James E. Kelleher, Warwick, for Plaintiff.

Raymond R. Pezza, Providence, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, JJ., and SHEA, J. (Ret.).

## OPINION

PER CURIAM.

This case came before the Court for oral argument on March 10, 2003, pursuant to an order that had directed all parties to appear and show cause why the issues raised on this appeal should not summarily be decided. After considering the arguments of counsel and the memoranda filed by the parties, we are of the opinion that cause has not been shown, and shall proceed to decide the case at this time.

The plaintiff, GBM Acquisitions, Inc. (plaintiff), appeals the trial justice's decision denying plaintiff's motion for a new trial following a jury verdict in favor of Susan Adams d/b/a The Waterfront Café (defendant). For the reasons set forth below, we affirm.

The plaintiff in this commercial lease dispute filed a complaint seeking eviction and back rent for arrearages defendant owed under a restaurant lease, and for the unlawful use of an adjacent boat slip. The facts pertinent to this appeal are as follows.

On May 1, 1999, defendant leased the premises on 50 Waterfront Drive, Warwick, from Jill Vilbig of Sea Pony Lounge, Inc. (lessor). The lessor agreed to lease "the furniture, fixtures, equipment, dining supplies and utensils, and premises located at 50 Waterfront Drive, * * * including adequate parking space [and] the use of the liquor license presently in the name of the lessor." The term of the lease was for three years with the option to renew. Rent was set at $300 per month during the

first year, $350 per month during the second year, and $400 per month during the third year, with each year of the term commencing May 1.

In September 2000, plaintiff acquired the marina at 50 Waterfront Drive, including the restaurant leased by defendant. The plaintiff took over the lease between defendant and Sea Pony Lounge, and received its first check from defendant for $300 for rent due October 1, 2000. The plaintiff continued to receive checks for $300 during the months of November 2000 and December 2000. Although these payments were $50 less than the sum due under the lease, plaintiff did not hold defendant accountable for the $50 deficiencies for those months. The controller for plaintiff, Susan Minarde, testified that she did not receive rent for the months of January 2001 through April 2001. However, plaintiff received a check for $350 on each month from May 2001 through July 2001, which fell $50 short of the amount due as of May 1, 2001. During May or June 2001, plaintiff also discovered that defendant had been docking her boat at the marina without plaintiff's permission.

On May 1, 2001, defendant was issued a new rental lease agreement from Leo J. Raymond, Jr. of GBM Acquisitions. The lease was for a one-year term at a rate of $800 per month, plus $5,000 for a liquor license management agreement. The lease also stated, "[d]ockage is not provided as part of lease agreement. Dockage available at rate of $50/ft. for summer contract period." The defendant declined to sign the lease, and in July 2001 plaintiff filed an action for trespass and ejectment in District Court.[1]

This matter was heard *de novo* in a trial before a jury in Superior Court. At the trial, defendant testified that she had made rental payments falling $50 short of the contract rate as of May 1, 2000, because Jill Vilbig, the landlord under the original lease, orally had granted her permission to do so.[2] She said that Vilbig had so agreed because defendant was responsible for maintaining grounds that were not part of the leased premises, including cutting the lawn, maintaining the septic system, and paying electricity charges for the docks.[3] The defendant also testified that she initially paid rent for the months of January 2001 and February 2001, but Minarde had returned the checks to defendant and excused her obligation to pay rent until a problem with the liquor license was resolved and defendant could reopen her restaurant. The defendant reopened the restaurant in May 2001, and at that time resumed paying rent at the discounted rate of $350. Minarde denied having this conversation with defendant, and denied having received the checks for January 2001 and February 2001. The defendant also testified that she had docked her boat at the marina since 1999, and conceded that she did not have anything in writing that gave her permission to keep her boat there.

At the close of evidence, the trial justice instructed the jury on oral modification of a contract involving the rent arrearages. The jury was to decide the dispute concerning the boat slip based on the language in the lease agreement, and was informed that the burden of proof rested

---

1. On October 5, 2001 defendant appealed a stipulation in favor of plaintiff to Superior Court. In that court, defendant's counterclaims were severed in an order issued October 22, 2001.

2. Jill Vilbig did not testify at trial.

3. However, the dock that defendant used was not connected to electricity.

on plaintiff.[4]

The jury returned a verdict in favor of defendant, and plaintiff filed a motion for a new trial. The trial justice denied the motion, finding that it was reasonable for the jury to find defendant credible and to conclude that an oral modification of the lease allowed defendant to pay a discounted rent, because of the additional expenses that she had incurred. Moreover, the court found that the jury reasonably could infer that the description of the premises in defendant's lease included the boat slip, which could be reached only by crossing over the leased property.

On appeal, plaintiff alleges that the jury disregarded the trial justice's instruction concerning defendant's use of the dock. Had it limited its analysis to the four corners of the written lease, plaintiff argues, the jury would have found for plaintiff. The plaintiff also submits that the court incorrectly instructed the jury to place the burden of proof on plaintiff, because defendant asserted a waiver defense that must be pled and proven by defendant.

■ It is well settled that in considering a motion for a new trial, the trial justice acts as a "superjuror." *Saber v. Dan Angelone Chevrolet, Inc.*, 811 A.2d 644, 652 (R.I.2002) (citing *English v. Green*, 787 A.2d 1146, 1149 (R.I.2001)). The trial justice's decision to grant or deny a motion for new trial after reviewing the evidence and commenting on the credibility of the witnesses "will not be disturbed unless he [or she] has overlooked or misconceived material and relevant evidence or was otherwise clearly wrong." *See English*, 787 A.2d at 1149 (quoting *Kurczy v. St. Joseph Veterans Association, Inc.*, 713

A.2d 766, 770 (R.I.1998)). Thus, "[i]f the trial justice determines that the verdict is against the fair preponderance of the evidence, a new trial should be ordered." *Montecalvo v. Mandarelli*, 682 A.2d 918, 923 (R.I.1996) (citing *Barbato v. Epstein*, 97 R.I. 191, 194, 196 A.2d 836, 837 (1964)). However, if the trial justice determines that reasonable minds could disagree on the verdict, the jury's verdict should not be disturbed. *Saber*, 811 A.2d at 652 (citing *Rezendes v. Beaudette*, 797 A.2d 474, 477–78 (R.I.2002)).

■ Under Rhode Island law, waiver is considered an affirmative defense and must be pled and proven by a defendant. *Robitaille v. Brousseau*, 115 R.I. 27, 31, n. 2, 339 A.2d 738, 741 n. 2 (1975). However, in this case the trial justice appropriately characterized defendant's assertion about the rent arrearages as an oral modification of a contract, rather than a unilateral waiver on plaintiff's part. Parties are free to modify a written agreement orally. *Fondedile, S.A. v. C.E. Maguire, Inc.*, 610 A.2d 87, 92 (R.I.1992). However, "the party alleging the modification must show that the parties demonstrated both subjective and objective intent to be bound by the new contract's terms." *Id.*

■ In this case, defendant testified that the rent was discounted because defendant had incurred expenses beyond those that she was responsible for under the lease. She said that she had paid $245 to service the septic tank, and had paid the electricity bills that had included charges for the docks. The defendant also testified that she was excused from paying rent for four months because her restaurant was closed because of plaintiff's failure to maintain the liquor license, as was required

**4.** The plaintiff objected to this portion of the charge, stating that defendant asserted a waiver defense that shifted the burden of proof to defendant. The plaintiff's objection was overruled.

under the lease. After having considered the parties' testimony and evidence presented at trial, the court found defendant's testimony credible. We hold that the trial justice did not overlook or misconceive material and relevant evidence, and affirm the trial court on this portion of plaintiff's claim.

 Concerning the defendant's use of the marina to dock her boat, the jury was instructed to limit its analysis to the four corners of the lease agreement. The original lease agreement was silent on the use of a boat slip. However, "[p]arol evidence may be admitted to complete or clarify an instrument that is ambiguous on its face." *Rotelli v. Catanzaro*, 686 A.2d 91, 95 (R.I.1996). The plaintiff's new lease specifically included a clause stipulating that dock space may be used by the tenant only for a fee. The trial justice determined that the jury reasonably could have concluded that if dockage had been excluded, it specifically would have been excluded in the original lease. The original lease contained a general description of the leased premises, including "the furniture, fixtures, equipment, dining supplies and utensils, and premises located at 50 Waterfront Drive * * * including adequate parking space * * *." However, the jury viewed photographs of the property and reasonably could have concluded that the dock adjacent to the restaurant was part of the leased premises. After reviewing the testimony and evidence on record, the trial justice concluded that the jury adequately responded to the merits of the controversy and was not wrong in finding for the defendant. We find that the trial justice did not overlook or misconceive material and relevant evidence. The denial of the motion for new trial was correct.

For these reasons the appeal is denied and dismissed, and the judgment appealed from is affirmed. The papers of this case are remanded to the Superior Court.

Justice FLAHERTY did not participate.