**Joyce REZENDES**

v.

**Daniel BEAUDETTE et al.**

**No. 2000–365–Appeal.**

Supreme Court of Rhode Island.

May 22, 2002.

Carolyn R. Barone, Warwick, David H. Stillman, Braintree, MA, for Plaintiff.

Humberta M. Goncalves, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Court for oral argument on April 9, 2002, pursuant to an order that directed both parties to appear to show cause why the issues raised by this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and that the issues raised by this appeal should be decided at this time. The facts pertinent to this appeal are as follows.

# I

## Facts and Travel

This appeal arises from a claim of malicious prosecution after plaintiff, Joyce Rezendes (plaintiff), was charged with larceny. The plaintiff was a long-time employee of Eagle Video, Inc., a corporation that owns several Blockbuster Video franchises. The defendants, Daniel and Russell Beaudette (Daniel and Russell respectively or collectively referred to as defendants) are co-owners of the video store, serving as president and vice president.[1] The plaintiff began working at the Seekonk, Massachusetts, video store in 1987 as a customer service representative (CSR) and, after several good performance evaluations, eventually became an assistant manager. As an assistant manager, plaintiff was responsible for issuing various customer credits, including goodwill credits and extended viewing credits. Only a manager or assistant manager could issue such credits, which required the employee to enter a password into the cash register. A manager or assistant manager could change his or her password at any time.

In March 1993, Laurine Brady (Brady), manager of the Seekonk store, noticed that the number of credits issued through plaintiff's password was inordinately high. Brady also testified that the credits issued for extended viewing did not coincide with late viewing fees, raising her suspicions. Consequently, Brady informed Daniel about the discrepancies. The defendants then checked employee work schedules and payroll records and compared them with the times that excessive credits were given. According to defendants, plaintiff's work schedule was the only one that coincided with the times that the credits were issued.

On March 10, 1993, defendants and Brady held a meeting with plaintiff, in a room in the back of the Seekonk store. At this meeting, plaintiff was questioned about the unusually high number of credits that had been issued with her password. The plaintiff explained that in December 1992, she had informed Brady that other CSRs had managers' passwords, including hers. Brady denied that plaintiff had ever reported such news to her. According to Daniel, plaintiff never gave a satisfactory explanation for the discrepancies in the credits. At the end of the meeting, therefore, Daniel took plaintiff's keys and put her on suspension. Daniel then told plaintiff that Eagle Video, Inc. was going to "investigate further and get back in touch with her."

Concerned that plaintiff did not have a satisfactory explanation when confronted with the discrepancies, Daniel contacted four customers who had received credits under plaintiff's password within that week. Although each of the four customers reported that plaintiff, or a woman who fit her description, had waited on them, none of the customers reported actually receiving credits. Instead, they all reported that they had paid in full for their movie rentals.

According to Daniel, the total amount of credits issued to those four individuals totaled $31.20. Russell testified that he then calculated that plaintiff had issued $2,135 in excessive credits by comparing the average amount of credits issued by the manager and the other assistant manager with plaintiff's average from September 1992 to March 1993.

Shortly thereafter, defendants filed a complaint with the Seekonk Police Department (police), reporting an internal theft of $2,135. The defendants gave the police

---

1. Celeste Beaudette Kheradi (Kheradi) is also a shareholder.

computer records indicating the number of credits issued, by type, and employee histories that kept track of all the activities of each employee's account for the preceding two-month period. The defendants left samples of the computer records with the police.

The plaintiff testified that approximately one week after the meeting, the police contacted her. She subsequently was charged with larceny in violation of the criminal laws of the Commonwealth of Massachusetts. The charge later was dismissed. In March 1994, plaintiff filed a claim against defendants for malicious prosecution. The defendants filed a counterclaim against plaintiff for negligent and/or intentional acts by plaintiff in the course of her employment at Eagle Video, Inc. A Superior Court jury trial began on May 8, 2000.

At trial, besides the facts stated above, Stephanie Kapstein (Stephanie), a CSR at the Seekonk store, testified for plaintiff. Stephanie testified that CSRs could see the passwords of the manager and assistant manager by simply standing behind them as they typed them into the cash register. Moreover, Stephanie testified that CSRs sometimes used these passwords without permission to prevent delays in serving customers. Finally, Stephanie testified that she lived with her mother and plaintiff, who was her mother's best friend.

After Stephanie's testimony, her mother, Paula Kapstein (Paula), testified. Paula explained that she owned a hair salon and that Brady and Kheradi were her clients. Paula testified that Brady and Kheradi discussed problems they had at work "with people * * * jumping off and on each other's computers and using each other's codes."

In addition to her testimony about the investigation, Brady also testified about how an employee could have stolen money from the store. According to Brady, at the time a customer was renting a video, an assistant manager simply could put a credit command into the cash register and pocket the money paid by the customer. Consequently, the daily receipts would balance at the end of the day because the computer would believe that no payment was due on the sale.

At the conclusion of plaintiff's case, defendants made a motion for judgment as a matter of law. The trial justice denied the motion. The jury ultimately found in favor of plaintiff in the amount of $67,000. The jury also found in favor of plaintiff on defendants' counterclaim. The trial justice then denied defendants' renewed motion for judgment as a matter of law. The defendants also filed a motion for a new trial, which was granted by the trial justice.

The plaintiff filed a timely appeal from the trial justice's grant of defendants' motion for new trial. The defendants also filed a cross-appeal from the trial justice's denial of their renewed motion for judgment as a matter of law.

## II

### Motion for a New Trial

■ The plaintiff argues that the trial justice abused his discretion because he "summarily substituted" his judgment for that of the jurors by failing to believe plaintiff's testimony. We disagree.

■ It is well established that the trial justice acts as a "superjuror" in considering a motion for a new trial. *English v. Green*, 787 A.2d 1146, 1149 (R.I.2001) (quoting *Long v. Atlantic PBS, Inc.*, 681 A.2d 249, 254 (R.I.1996)). Therefore, if the trial justice:

"reviews the evidence, comments on the weight of the evidence and the credibility of the witnesses, and exercises his * * * independent judgment, his * * * determination either granting or denying a motion for new trial will not be disturbed unless he * * * has overlooked or misconceived material and relevant evidence or was otherwise clearly wrong." *Id.* (quoting *Kurczy v. St. Joseph Veterans Association, Inc.,* 713 A.2d 766, 770 (R.I.1998)).

If the trial justice determines that the evidence is evenly balanced or that reasonable minds could differ on the verdict, he should not disturb the jury's decision. *See Perkins v. City of Providence,* 782 A.2d 655, 656 (R.I.2001) (citing *Kurczy,* 713 A.2d at 770). However, if the trial justice determines that the verdict is against the preponderance of the evidence, and thus fails to do justice between the parties, he should grant the motion. *See id.*

▬▬ In the instant case, the trial justice, in deciding the motion for new trial, properly considered the evidence and commented on the credibility of the witnesses. The trial justice specifically stated that he did not believe plaintiff's testimony that she had told defendants that others were using her password. The trial justice then determined that "the jury did not do substantial justice in this case" and that "the evidence preponderates against the verdict." He concluded that "[a]ssessing the evidence independently and exercising my function as a [superjuror], I find that there was an abundance of probable cause to have gone to the police to initiate this accusation." The trial justice did not overlook or misconceive material evidence in making this determination. Instead, it was well within his discretion to determine the credibility of the witnesses. We disagree with plaintiff that the trial justice misconceived the evidence by erroneously

referring to Stephanie as a possible "family member." The record shows that plaintiff lived with Stephanie and that she was Paula's best friend. The trial justice's error, therefore, is of no consequence.

## III

### Judgment as a Matter of Law

The defendants filed a cross-appeal, arguing that the trial justice erred by denying their motion for judgment as a matter of law because plaintiff failed to prove the elements required for malicious prosecution. Specifically, defendants assert that plaintiff failed to prove both that defendants "initiated a proceeding" and that there was a lack of probable cause to prosecute plaintiff. We disagree.

▬▬ We have previously stated that in determining the appropriateness of a judgment as a matter of law, this Court "considers the evidence in the light most favorable to the nonmoving party, without weighing the evidence or evaluating the credibility of witnesses, and draws from the record all reasonable inferences that support the position of the nonmoving party. * * * If, after such a review, there remain factual issues upon which reasonable persons might draw different conclusions, the motion for [judgment as a matter of law] must be denied * * *." *Martino v. Leary,* 739 A.2d 1181, 1182 (R.I.1999) (quoting *DeChristofaro v. Machala,* 685 A.2d 258, 262 (R.I.1996)); *see also Barone v. The Christmas Tree Shop,* 767 A.2d 66, 68 (R.I.2001).

Moreover, to prove a claim of malicious prosecution, the party bringing the action must prove that the opposing party (1) initiated a prior criminal proceeding against him or her, (2) that there was no probable cause to initiate the proceeding, (3) the proceeding was "instituted mali-

ciously," and (4) the proceeding terminated in his or her favor. *Beaudoin v. Levesque*, 697 A.2d 1065, 1067 (R.I.1997) (quoting *Solitro v. Moffatt*, 523 A.2d 858, 861–62 (R.I.1987)). The party bringing an action for malicious prosecution must prove his or her claim by "clear proof." *Clyne v. Doyle*, 740 A.2d 781, 782 (R.I.1999) (quoting *Brough v. Foley*, 572 A.2d 63, 66 (R.I. 1990)). Finally, "probable cause exists when facts and circumstances would lead an ordinarily prudent and careful person to conclude that the accused is guilty. * * * [I]t is sufficient that the facts known to the accuser provide reasonable grounds for a belief that criminal activity at the hands of the accused has occurred." *Id.* at 783 (quoting *Solitro*, 523 A.2d at 862).

■ The defendants first argue that plaintiff did not prove that defendants had initiated a proceeding against her because the only evidence presented was that Daniel and Russell compiled computer records and took them to the police, reporting an "internal theft." Moreover, defendants argue that the docket sheet indicated that the complainant was "Edward Souza," an individual completely unknown to defendant. We disagree.

Considering the evidence in the light most favorable to plaintiff, and drawing all reasonable inferences in her favor, reasonable minds could differ about whether defendants had initiated an action against her. The defendants testified that they took payroll and employee records to the police to report an internal theft. Daniel testified that at the time he went to the police, he believed plaintiff had stolen money from him. Moreover, although defendants argue that that an individual named "Edward Souza" initiated the complaint, Russell stated, in his deposition that he filed the complaint with the police. Finally, he also acknowledged, during his testimony, that Edward Souza appeared to be a member of the police department.

Consequently, the trial justice did not err in determining that a jury could have found that defendants initiated the prosecution.

■ The defendants also argue that plaintiff did not prove the requisite absence of probable cause to sustain a claim of malicious prosecution. We disagree.

In the instant case, considering the evidence in plaintiff's favor, a reasonable person could have differed on whether defendants had probable cause to file a complaint against plaintiff. The evidence shows that defendants made phone calls to only four of the customers who had received suspicious credits. Some of these customers were able to state only that someone matching plaintiff's description had waited on them. Moreover, although the total amount of excessive credits from these four customers was only $31.20, defendants informed police that plaintiff had stolen more than $2,000. Finally, if plaintiff's testimony that she had reported to Brady that other individuals had her password is taken as true, reasonable persons could differ about whether defendants had made an adequate internal investigation before reporting the theft to the police.

Consequently, after considering the record and drawing all reasonable inferences in favor of the plaintiff, we conclude that the trial justice did not err in denying the defendants' motion for judgment as a matter of law.

### Conclusion

Accordingly, the plaintiff's appeal and the defendants' cross-appeal are denied and dismissed. The judgment of the Superior Court is affirmed. The papers of the case are returned to the Superior Court for a new trial.