DECISION
Before this Court is the motion of Frank P. Baylies, Rosemary Baylies, Individually and as Mother and next Friend of Collin James Baylies, Geoffrey David Baylies, and Laura Rose Baylies (the "Plaintiffs") for a new trial pursuant to Rule 59 of the Rhode Island Superior Court Rules of Civil Procedure. Curtis Doberstein, M.D. ("Defendant") objects to the Plaintiffs' motion and renews his motion for judgment as a matter of law pursuant to Rule 50(b). For the reasons set forth below, this Court denies the Plaintiffs' motion for a new trial and denies the Defendant's renewed motion for judgment as a matter of law.
 FACTS AND TRAVEL
On April 26, 1996, Frank P. Baylies was admitted to the Rhode Island Hospital, under the care of Dr. Curtis Doberstein, for a posterior fossa craniotomy resection of a right acoustic neuroma. Prior to his surgery, Mr. Baylies had undergone three preoperative blood studies, each of which showed that he had an elevated prothrombin time (PT). His elevated PT level was likely caused by a deficiency in Factor VII, one of the clotting factors of his blood. On the morning of the surgery, Mr. Baylies' PT was 16.3 seconds. The control at the Rhode Island Hospital was 12 seconds. Mr. Baylies received transfusions of fresh, frozen plasma in order to bring his Factor VII to within a normal range. The half-life of Factor VII, which is replenished by the transfusions, is no more than five or six hours after it is replaced.
Within twelve to eighteen hours following the surgery, Mr. Baylies started bleeding inside his skull. This complication of intracranial bleeding required two emergency craniotomies to evacuate the hematomas. On December 17, 1997, the Plaintiffs filed a medical malpractice action against Dr. Doberstein and Rhode Island Hospital, claiming that their negligence led to Mr. Baylies' post-surgical complications.
On February 3, 2003, all claims against Rhode Island Hospital were dismissed with prejudice. On February 4, 2003, a Superior Court jury began hearing testimony surrounding the facts that led to the civil negligence action against the Defendant, Dr. Doberstein. Dr. Michael Laposata, a coagulation specialist from Massachusetts General Hospital, and not one of Mr. Baylies' treating physicians, testified on behalf of the Plaintiffs that the postoperative bleed was caused by the inadequacy of Factor VII within Mr. Baylies' blood. Dr. Laposata rendered an opinion that Dr. Doberstein's treatment of plasma transfusions was inadequate to enable Mr. Baylies' blood to clot normally, both as to frequency and the sufficiency of dosage, based on the patient's elevated PT levels. Dr. Laposata testified as to the "unique program" at Massachusetts General Hospital, which provides an automatic expert opinion whenever evaluations are performed that involve specialized testing in coagulation. He testified that he had tested Mr. Baylies, his parents, and his children and found that there was a Factor VII deficiency that was heterozygous. He acknowledged that he had written an article that indicated that there was no bleeding risk in heterozygous deficiency, with rare exceptions. He further testified that the present case did not fall into one of the rare exception categories. Dr. Laposata also acknowledged that he had written that the risk of bleeding "appears to be very low when the prothrombin time and the partial thromboplastin time are only mildly elevated and that means 1 ½ times the control."
The Defendant's neurosurgery expert, Dr. Long, opined that the Defendant's treatment of Mr. Baylies' elevated PT levels with two units of fresh frozen plasma before surgery, one unit during surgery, and two units shortly before the discovery of his first postoperative bleed, was adequate to deal with the issue of postoperative bleeding. Dr. Hellwig, the Defendant's hematology expert, testified that he would have prescribed the exact same course of administering fresh frozen plasma as that which Dr. Doberstein administered in the present case. Doctors Crowley, Long, Doberstein, de Lotbinieiere, and Ellman all offered testimony as to the appropriateness of the treatment. Drs. de Lotbinieiere and Crowley were particularly compelling in their assessment that the Defendant's conduct more than comported with the standard of care. Both Drs. de Lotbinieiere and Crowley withstood cross-examination without difficulty.
Dr. Leonard Ellman, a board certified hematologist from Massachusetts General Hospital, testified for the Defendant that he was surprised that he did not find information concerning Dr. Laposata's specific testing of Mr. Baylies, his parents, and his children in the hospital computer system. Though he did not question Dr. Laposata's integrity, Dr. Ellman characterized the testing as an informal set of tests that were not handled in the conventional manner and not officially entered into the hospital's medical record-keeping system. He stated that the program at Massachusetts General Hospital, which allows Dr. Laposata to provide an interpretation after testing, contradicts Medicare regulations because Medicare requires that a consultation must be requested by the requesting doctor. Though he did not have any supporting documentation, Dr. Ellman testified that to do private testing and not enter the results in the hospital computer system violates the rules and regulations of Massachusetts General Hospital.
After twelve days of testimony, the trial concluded on February 25, 2003 with the jury returning a verdict in favor of the Defendant. After entry of judgment, the Plaintiffs filed a timely motion for a new trial with this Court. The Plaintiffs contend that their causation expert, Dr. Laposata, was wrongfully made to look like a fraud because of the "prejudicial, inflammatory, [and] irrelevant testimony" of Dr. Ellman, an expert witness on behalf of the Defendant, during his cross-examination, thus prejudicing the jury against them. The Defendant counters that Dr. Laposata's testimony was not unduly prejudicial and, furthermore, was inconsistent with his own writings and the testimony and actions of others who cared for Mr. Baylies. Additionally, the Defendant asks this Court to direct a verdict in his favor pursuant to his renewed motion for judgment as a matter of law. A hearing on these motions was held before this Court on April 3, 2003.
 PLAINTIFFS' MOTION FOR A NEW TRIAL Rule 59(a) of the Rhode Island Superior Court Rules of Civil Procedure provides that:
 "[a] new trial may be granted to all or any of the parties and on all or part of the issues . . . in an action in which there has been a trial by jury for error of law occurring at the trial or for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of this state . . . ."
When considering a motion for a new trial, the trial justice acts as a "super juror," reviewing all of the evidence in light of his or her independent judgment. See Rezendes v. Beaudette, 797 A.2d 474, 477-78 (R.I. 2002). Although the trial justice need not "make an exhaustive analysis of the evidence or state all relevant conclusions about the weight of the evidence or the witnesses' credibility," Rucco v. RhodeIsland Pub. Transit Auth., 525 A.2d 43, 45 (R.I. 1987), he or she must comment on the weight of the evidence and on the credibility of the witnesses. See Rezendes, 797 A.2d at 478. If the trial justice "determines that the evidence is evenly balanced or that reasonable minds could differ on the verdict," then he or she should allow the verdict to stand. Id. Alternatively, upon a finding that "the verdict is against the preponderance of the evidence, and thus fails to do justice between the parties," the trial justice should grant the motion for a new trial. Id. Rule 59 assumes that "[a]ny error of law, if prejudicial, is a good ground for a new trial." Votolato v. Merandi, 747 A.2d 455, 460 (R.I. 2000).
 Standard of Care
The Plaintiffs argue that the Defendant's expert witness, Dr. Ellman, was erroneously permitted to opine to the jury that Dr. Laposata was guilty of Medicare fraud, that he violated the requirements of the agencies that certify hospital laboratories, and that he violated the written record-keeping requirements of the Massachusetts General Hospital. It is the Plaintiffs' contention that this testimony was irrelevant, highly prejudicial, had no probative value, and should have been stricken, with an appropriate curative instruction, as violative of Rule 403 of the Rhode Island Rules of Evidence. The Plaintiffs submit that the Court's failure to strike Dr. Ellman's comments concerning Dr. Laposata when made, and the inadequacy of the Court's instruction to the jury when being charged to disregard this testimony, resulted in the jury's accepting "hook, line and sinker" Dr. Long's opinion that the Defendant's actions concerning the treatment of Mr. Baylies' elevated PT levels was adequate to deal with the issue of postoperative bleeding. The Plaintiffs maintain that the Court's actions jeopardized their ability to receive a fair trial.
In response to the Plaintiffs' arguments, the Defendant notes that it was the Plaintiffs' attorney, on cross-examination, who elicited the testimony that they object to in the present motion. He argues that the Plaintiffs' attorney objected only once to an item of testimony on which the Plaintiffs base their motion for a new trial; specifically, when Dr. Ellman said he was surprised that he did not find information concerning Dr. Laposata's testing of Mr. Baylies, his parents, and his children in the hospital computer system. The Defendant maintains that Dr. Ellman's testimony is not so prejudicial as to require a new trial because Dr. Ellman also testified that he was not questioning Dr. Laposata's integrity and accepted Dr. Laposata's testing results but had reached other conclusions. Furthermore, the Defendant argues that the Court cured whatever deficit the Plaintiffs perceived when it instructed the jury to disregard that portion of Dr. Ellman's testimony that commented on Dr. Laposata's methods. The Defendant also submits that the jury's rejection of Dr. Laposata's testimony related to the fact that the testimony contradicted, in part, his own publications and, in other parts, by the actions and opinions of physicians who cared for Mr. Baylies. The Defendant notes that Dr. Crowley, Dr. Long, Dr. Doberstein, Dr. de Lotbinieiere, and Dr. Ellman all provided testimony as to the appropriateness of the treatment and the fact that it was within the standard of care.
The trial justice has a "`front row seat' at the trial and is therefore best able to gauge the effect of the improvident remarks heard by a jury." State v. Pailin, 114 R.I. 725, 729, 339 A.2d 253, 255 (1975). Ordinarily, it is "essential that a cautionary instruction be given immediately in order that the seed planted by the remark will not be given time to germinate." State v. Hoyle, 122 R.I. 45, 49-50, 404 A.2d 69, 71 (1979) (quoting State v. Sherman, 113 R.I. 77, 81-82, 317 A.2d 445, 448 (1974)). "In some instances, however, an immediate instruction may tend to highlight, rather than minimize, the harmful effect on the jurors and thereby exacerbate rather than dissipate the prejudice." Id. at 50. "[P]rejudice obviously inheres if the remarks are totally extraneous to the issues in the case and tend to inflame and arouse the passions of the jury." State v. Mancini, 108 R.I. 261, 273-74, 274 A.2d 742, 748 (1971) (citing State v. Werner, 87 R.I. 314, 318, 140 A.2d 502, 504 (1958)).
There was no error of law warranting a new trial in allowing Dr. Ellman to testify, on cross-examination, that Dr. Laposata's program "flouts Medicare regulations," that he was not complying with the licensing requirements of laboratories when a technician did not sign off on the testing, and that he was not maintaining his recordkeeping consistent with the regulations of Massachusetts General Hospital. On cross-examination, Dr. Laposata was often non-responsive to questions and his testimony was generally broad-brushed, global, and all-purposed. His testimony on cross-examination was susceptible to contradiction, such as through the testimony of Dr. Ellman, who never questioned Dr. Laposata's integrity. As expressed in his testimony, Dr. Ellman simply reached different conclusions than Dr. Laposata. Those conclusions were well grounded and, ultimately, compelling.
On the day following Dr. Ellman's testimony, the Plaintiffs' counsel made a formal motion to strike with a curative instruction, which this Court declined to do, instead electing to address the matter during its charge to the jury. Having been best able to gauge the effect of Dr. Ellman's remarks on the jury in the present case, this Court exercised its judgment of the circumstances and withheld its instruction until the final charge. Moreover, the Court notes that the Plaintiffs' counsel did not immediately request a cautionary instruction, and did not move to strike until the following day. Under these circumstances, the Plaintiffs cannot assign as error that the cautionary instruction was not timely.
This Court decided to withhold its instruction until its charge to the jury, instructing the jury members as follows:
 "Let me make an additional comment. At one point you heard one expert comment on what he viewed as improprieties of another expert. I'll instruct you that — and those improprieties have been denied. That is not an issue at this trial. So to the extent you remember any of that testimony, you can disregard it."
This Court, sensitive to the Plaintiffs' concerns about the testimony, gave a curative instruction to the jury when it was charged. The Rhode Island Supreme Court has held that it is not unreasonable to conclude that in many cases involving the mere admission of improper evidence, the jury can and will follow the trial judge's instructions to disregard such evidence. State v. Ouimette, 110 R.I. 747, 773, 298 A.2d 124, 139 (1972). The Plaintiff in the present case further argues that the Court's cautionary instruction included in the final charge to the jury was insufficient to banish from their minds the prejudice that they assert. Implicit in this argument is the contention that the jurors were not able to follow the Court's instruction to disregard Dr. Ellman's remarks concerning Dr. Laposata. However, the Plaintiff has failed to establish that Dr. Ellman's remarks were so extraneous to the issues in the case and so tended to inflame the passions of the jury that they rendered the cautionary jury instruction to disregard Dr. Ellman's opinion of Dr. Laposata's methods insufficient. It should also be noted that Plaintiffs' counsel did not object to the curative instruction, or otherwise comment on its efficacy, after it was given. Therefore, the Plaintiffs failed to establish the risk of prejudice necessary to constitute reversible error.
Sitting as a "super juror," this Court has reviewed all of the evidence and credibility of the witnesses at trial. The jury determined that the Defendant did not act with negligence in April 1996, and the jury reasonably could so determine based on the substantial evidence and testimony offered at trial. Dr. Ellman offered compelling testimony on behalf of the Defendant that there was no relationship between the slightly prolonged prothrombin times and the postoperative bleeding and that the slightly low Factor VII level had no bearing on the bleeding. Dr. Ellman also testified that there were indications in Mr. Baylies medical history that he was not predisposed to bleeding because he had no excessive bleeding in prior surgeries and his 8 bleeding time before the surgery leading to the present litigation was in the normal range. Finally, Dr. Ellman provided the expert opinion that the amount of plasma administered to Mr. Baylies was more than adequate to correct any slight deficiency of Factor VII and that no one could have predicted the type of bleeding that occurred.
Additionally, there is the testimony of Dr. Hellwig, another hematologist who advised Mr. Baylies' prior to the surgery. Dr. Hellwig, with full knowledge of the alleged Factor VII deficiency, full knowledge of the bleeding that occurred after Dr. Doberstein's surgery, and full knowledge of the various PT levels, recommended the same course of action that Dr. Doberstein undertook. Altogether, the Defendant's numerous expert witnesses successfully countered the opinion of Dr. Laposata, the Plaintiffs' expert, regarding the significance of Mr. Baylies' elevated PT levels. Dr. Laposata was singularly unimpressive. His testimony was largely discredited on cross-examination and, at best, was overshadowed by the testimony of other experts. He proselytized, was evasive and unresponsive on cross-examination, and did not focus on questions. Dr. Ellman, on the other hand, testified confidently at great length. The Plaintiffs' emphasis on a mere portion of Dr. Ellman's thorough testimony to support their motion for a new trial is ironic because it was their expert's global declarations that opened the door to the very comments with which they now take issue.
Weighing the evidence and examining the credibility of witnesses, this Court finds that the verdict responds to the merits of the case and is not against the fair preponderance of the evidence. There was sufficient evidence to support the jury verdict for the Defendant regarding the appropriate standard of care. The treatment of Mr. Baylies prior to the surgery, during the surgery, and immediately after the surgery has been debated by a number of qualified physicians. Reasonable minds could have differed about the appropriateness of this treatment upon consideration of the evidence and the testimony at trial.
 Informed Consent
Though not argued in their written memorandum to this Court, the Plaintiffs did revisit the issue of informed consent at the April 3, 2003 hearing on the motion for a new trial. The Plaintiffs contended that the Defendant admitted that he never communicated to Mrs. Baylies the elevated level of her husband's PT on the morning of the surgery. The Defendant countered at the hearing that there was an abundance of testimony to demonstrate that Dr. Doberstein's actions fell within the informed consent standard. He maintains that he informed Mrs. Baylies before the surgery that there were elevated PT levels and that he would take care of those levels by administering fresh frozen plasma. The Defendant contends that the expert testimony establishes that the minimal increase in the PT levels from before the surgery to the day of the surgery did not mandate further communication to the patient about the inconsequential elevation in PT levels.
"Under the doctrine of informed consent, a physician must communicate to a patient `the material risks associated with and the viable alternatives to a recommended surgical procedure.'" Kenny v. Wepman,753 A.2d 924, 926 (R.I. 2000) (quoting Flanagan v. Wesselhoeft,712 A.2d 365, 371 (R.I. 1998)). "To recover under this doctrine, a plaintiff must also prove that if he or she had been informed of the material risks and alternative methods of treatment, he or she would not have consented to the procedure." Id. (citing Wilkinson v. Vesey,110 R.I. 606, 628-29, 295 A.2d 676, 690 (1972)). "Materiality may be said to be the significance a reasonable person, in what the physician knows or should know is his patient's position, would attach to the disclosed risk or risks in deciding whether to submit or not to submit to surgery or treatment." Wilkinson, 110 R.I. at 627, 295 A.2d at 689.
With respect to the motion for a new trial on the basis of informed consent, the Plaintiffs have not articulated the element of Rule 59 on which they rely for their motion. However, this Court finds generally on the issue of informed consent that reasonable minds could have differed. Both Mr. and Mrs. Baylies testified that Mrs. Baylies was the decision-maker in their relationship. Mrs. Baylies came across at trial as articulate, well-educated, and medically sophisticated. She has a master's degree in health care administration and is a practicing nurse. She was a hands-on spouse who was very attentive with her husband's physicians and potential physicians. Mrs. Baylies testified that she and Dr. Doberstein discussed the risks of the surgery, including the chance of bleeding. She and her husband knew the potential benefits and dangers of this surgery and understood them better than would most other people. Moreover, there is record evidence that they were grateful to the doctors involved that Mr. Baylies even survived the surgery. Mrs. Baylies sought out Dr. Doberstein in the hospital to thank him and, months later, she sent him a card again expressing her gratitude.
Therefore, after a review of the entire record in this matter, this Court finds that the jury's verdict with respect to the issue of informed consent was not against the preponderance of the evidence.
 DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW
Pursuant to Rule 50(b) of the Rhode Island Superior Court Rules of Civil Procedure, whenever a motion for judgment as a matter of law, made at the close of all the evidence, is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. A motion for a new trial pursuant to Rule 59 may be joined with a renewal motion for a judgment as a matter of law, or a new trial may be requested in the alternative. Id. If a verdict was returned, then the court may, in disposing of the renewed motion, allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as a matter of law. Id.
When addressing a renewed motion for judgment as a matter of law, the trial justice must "consider the evidence in the light most favorable to the nonmoving party, without weighing the evidence or evaluating the credibility of the witnesses, and draw from the record all reasonable inferences that support the position of the nonmoving party." Skaling v.Aetna Ins. Co., 742 A.2d 282, 287 (R.I. 1999). Additionally, "if, after such a review, there remain factual issues upon which reasonable persons might draw different conclusions, the motion for judgment as a matter of law must be denied." Id. Further, the Rhode Island Supreme Court has held that a court should direct a verdict "when the evidence permits only one legitimate conclusion in regard to the outcome." Long v. Atlantic PBS,681 A.2d 249, 252 (R.I. 1996). "Relying on the evidence accepted and inferences drawn, the trial justice must: `decide whether to approve the verdict even against doubts as to its correctness because the evidence is nearly balanced, or is such that different minds can naturally and fairly come to different conclusions thereon; or, in the alternative, to set it aside when his [or her] judgment tells him [or her] that it is wrong because it fails to respond truly to the merits of the controversy and to administer substantial justice and is against the fair preponderance of the evidence.'" Id. at 254-55.
The Defendant argues that he is entitled to a judgment as a matter of law with respect to the following: (1) the Plaintiffs' economic expert based his valuation of Mr. Baylies' homemaker services on an assumption that he was one hundred percent disabled from performing such services, but the evidence demonstrated that he was not disabled to that extent; (2) the issue of future economic damages should not have been submitted to the jury because the jury would have to speculate as to the length of time, if any, that Mr. Baylies would have continued to remain unimpaired by his NF2; (3) as to informed consent, the Plaintiff presented no evidence as to the incidence, if any, of increased risks of bleeding due to elevated PT levels and lowered Factor VII levels over and above the normal risks of bleeding relating to the type of surgery performed; (4) there was no evidence by any hematologist that would have suggested that the Defendant do anything other than what he did in addressing the elevated PT levels; (5) the Plaintiffs' neurosurgical expert, Dr. Horowitz, based his opinions on an incorrect assumption that Mr. Baylies' surgery was brain surgery; and (6) Dr. Laposata's testimony indicated, first, that he could not tell if the bleeding occurred simply because it happens in eight percent of all surgeries of this type and, second, that he based his testimony on "presumptions" that Factor VII levels reached a "danger" zone, but that he had no idea as to whether such levels in fact reached that zone. The Plaintiffs did not file a response to the Defendant's renewed motion of judgment as a matter of law but did inform the Court at the April 3, 2003 hearing that their arguments opposing the motion were made at side bar during the trial.
In the present case, viewing the evidence in a light most favorable to the Plaintiffs, without assessing the credibility of the witnesses or weighing the evidence, this Court finds that there is conflicting evidence with respect to all of the points that the Defendant argues, especially from all of the expert testimony presented. Because of this conflicting evidence, factual issues remained such that reasonable minds could have drawn different conclusions. Accordingly, drawing all reasonable inferences in favor of the Plaintiffs, this Court finds that the Defendant's renewed motion for judgment as a matter of law must be denied.
 CONCLUSION
Because reasonable minds could have differed regarding the merits of the case, the verdict shall stand. The jury's verdict responds to the merits of the controversy and administers substantial justice. This Court finds competent and credible evidence to sustain the jury's verdicts on the standard of care and informed consent. Accordingly, the Plaintiffs' motion for a new trial is denied, and the Defendant's renewed motion for judgment as a matter of law is denied.