[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court are several post-trial motions in the above-entitled matter. Jacen Scungio, John Lepore, and Carmen Iacobo (the "Defendants") renew their motion for judgment as a matter of law. Additionally, the Defendants move this Court for a new trial. Kyle Rowley (the "Plaintiff") objects to these motions and moves for a new trial or, in the alternative, an additur.
 FACTS AND TRAVEL
On January 29, 1999, students from Brown University arrived at Bootleggers Nightclub for a private party in a room that had been reserved beforehand The Plaintiff and a group of his friends — all associated with the Brown football team — were partygoers in that room that evening. The Defendants, who were students at other local colleges, were "bouncers" at the club. A substantially larger number of partygoers than expected, numbering in the hundreds, showed up. Despite the unexpected number of guests, the party went forward without incident.
After the party wound down in the early morning hours of the next day, however, an incident occurred that resulted in the present litigation. As the Plaintiff and one of his friends were about to leave the club, the friend became chagrined when he could not find his jacket. Helping his friend in the search, the Plaintiff observed a gentleman wearing a jacket similar to the one that was missing. He approached the gentleman to ask whether the jacket belonged to him or to the Plaintiff's friend. After the gentleman told the Plaintiff that it was his own jacket, the Plaintiff turned away from him and expectorated on the floor.
The club's management happened to observe the Plaintiff as he expectorated. "Do you do that at home?" management asked the Plaintiff. "Yeah," the Plaintiff replied offhandedly. Subsequent to this brief back-and-forth, the Plaintiff and the remaining members of his group made their way down the stairs to exit the club. The Plaintiff was at the rear of this group, followed by Defendant Lepore. What happened next happened very quickly and is disputed. Allegedly, punches were thrown. Defendants Scungio and Iacobo aided Lepore by attempting to separate the Plaintiff from him. As a result of this imbroglio, the Plaintiff, Iacobo, and Lepore received injuries that they were able to attend to themselves. The Plaintiff was bruised and sore. He did not seek medical attention after he left the club. In fact, the Plaintiff did not seek treatment until January 31, 1999, when he visited the Brown University Infirmary.
On April 11, 2000, the Plaintiff filed a Complaint seeking compensatory and punitive damages against the Defendants for committing tortious acts against him, including assault, battery, false imprisonment, and intentional and negligent infliction of emotional distress. On October 11, 2002, after a jury trial that lasted three days, a verdict was entered for the Plaintiff against all three Defendants on the assault and battery claims. However, the jury found in favor of the Defendants on the false imprisonment and intentional and negligent infliction of emotional distress claims. The jury awarded the Plaintiff $0 in compensatory damages and $12,000 in punitive damages. Several post-trial motions were filed, which are discussed below individually.
 DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW Standard of Review
When addressing a renewed motion for judgment as a matter of law pursuant to Super. R. Civ. P. Rule 50, the trial justice must "consider the evidence in the light most favorable to the nonmoving party, without weighing the evidence or evaluating the credibility of the witnesses, and draw from the record all reasonable inferences that support the position of the nonmoving party." Skaling v. Aetna Inx. Co., 742 A.2d 282, 287 (R.I. 1999). Additionally, "if, after such a review, there remain factual issues upon which reasonable persons might draw different conclusions, the motion for judgment as a matter of law must be denied." Id. Further, the Rhode Island Supreme Court has held that a court should grant such a motion "when the evidence permits only one legitimate conclusion in regard to the outcome."Long v. Atlantic PBS, 681 A.2d 249, 252 (R.I. 1996).
 The Punitive Damages Award
As to the punitive damages count in the Plaintiff's Complaint, the Defendants argue that judgment as a matter of law is warranted because there was no legally sufficient basis for a reasonable jury to award the Plaintiff such damages. The Plaintiff responds that more than ample evidence was presented for the jury to conclude that the Defendants acted maliciously and intentionally in committing assault and battery on the Plaintiff so as to warrant an award of punitive damages.
In tort actions, punitive damages are allowed only where the defendant acted maliciously or in bad faith. Carvalho v.Coletta, 457 A.2d 614 (R.I. 1983) (citing Berberian v. NewEngland Tel. Tel. Co., 117 R.I. 629, 634, 369 A.2d 1109, 1112 (1977)). A party seeking punitive damages "must produce `evidence of such willfulness, recklessness or wickedness, on the part of the party at fault, as amounts to criminality, which for the good of society and warning to the individual, ought to be punished.'" Morin v. Aetna Cas. and Surety Co., 478 A.2d 964, 967 (R.I. 1984) (quoting Sherman v. McDermott, 114 R.I. 107, 109, 329 A.2d 195, 196 (1974)). Assault and battery are torts that involve maliciousness, wantonness, or willfulness, and a finding of such will support an award of punitive damages.Sherman, 114 R.I. at 109, 329 A.2d at 197 (holding that where there was no evidence of provocation for the defendant's attack, and where plaintiff was held by two police officers while being beaten by another officer, sufficient evidence of maliciousness, wantonness, and willfulness existed to support an award of punitive damages). An assault is a physical act or an offer of corporal injury that puts an individual in reasonable fear of imminent bodily harm, while battery is an act that was intended to cause, and does cause, an offensive contact with the body of another. Picard v. Barry Pontiac-Buick, Inc., 654 A.2d 690, 694 (R.I. 1995).
In the present matter, the Plaintiff testified that it became obvious to him when he was looking for his friend's jacket that the manager of the club was upset with him, and that he may have been upset because the Plaintiff did not respond to the manager's question concerning the spit on the floor. He then testified that he was grabbed by the hood of his coat and pulled backwards. As a result, he became frightened and attempted to leave the club. According to the Plaintiff, his attempt to leave was unsuccessful because two of the Defendants began to punch him in the face, and the third began beating him as well.
Each of the Defendants, however, testified to a markedly different set of facts than that of the Plaintiff. Defendant Iacobo testified that while he was at the club entrance at closing time with Defendant Scungio, he saw the Plaintiff striking Defendant Lepore twice in the face. Iacobo stated that the Plaintiff then punched Scungio after Scungio attempted to get between Lepore and the Plaintiff. According to Iacobo, the Plaintiff also punched and bit Iacobo when he attempted to intervene. Scungio's testimony is similar to Iacobo's. Lepore testified that at closing time he told a group of partygoers, including the Plaintiff, to leave. According to Lepore, this group then went down the stairs to exit, with the Plaintiff among the last, and Lepore two steps behind him. Lepore stated that the Plaintiff was abrasive and swearing. When the two came to the bottom of the stairway, Lepore testified that the Plaintiff did not immediately leave. When Lepore asked him one final time to leave, the Plaintiff punched at him.
The jury found that the Defendants had committed assault and battery on the Plaintiff. The Plaintiff provided testimony that supported that finding. Though all of the Defendants disputed the Plaintiff's testimony, this Court must not weigh the evidence or evaluate the credibility of the witnesses when ruling on this motion for judgment as a matter of law. Judgment as a matter of law can be granted when the evidence permits only one legitimate conclusion. Such is not the case here because factual issues remain with respect to whether the Defendants assaulted the Plaintiff, whether the Plaintiff was the aggressive provocateur, and whether the force used to restrain the Plaintiff's behavior was excessive under the circumstances. Furthermore, as stated above, our Supreme Court has determined that the torts of assault and battery involve maliciousness, wantonness, or willfulness such as will support an award of punitive damages. Assault and battery having been found, this Court, however mindful of the evidence regarding the Plaintiff's conduct in provoking the fight, is constrained to find that certain evidence submitted by the Plaintiff supports the jury's award of punitive damages. The Plaintiff testified that without legitimate justification, one of the Defendants grabbed him from behind and the other two beat him with their fists. Considering this evidence in the light most favorable to the Plaintiff, the non-moving party, this Court must deny the Defendant's motion for judgment as a matter of law because there was a legally sufficient basis for a reasonable jury to award the Plaintiff punitive damages.
 MOTIONS FOR A NEW TRIAL Standard of Review
Rule 59(a) of the Rhode Island Superior Court Rules of Civil Procedure provides that:
 "[a] new trial may be granted to all or any of the parties and on all or part of the issues . . . in an action in which there has been a trial by jury for error of law occurring at the trial or for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of this state. . . ."
When considering a motion for a new trial, the trial justice acts as a "super juror," reviewing all of the evidence in light of his or her independent judgment. Rezendes v. Beaudette,797 A.2d 474, 477-78 (R.I. 2002). Although the trial justice need not "make an exhaustive analysis of the evidence or state all relevant conclusions about the weight of the evidence or the witnesses' credibility," Rucco v. Rhode Island Pub. TransitAuth., 525 A.2d 43, 45 (R.I. 1987), he or she must comment on the weight of the evidence and on the credibility of the witnesses. Rezendes, 797 A.2d at 478. If the trial justice "determines that the evidence is evenly balanced or that reasonable minds could differ on the verdict," then he or she should allow the verdict to stand Id. Alternatively, upon a finding that "the verdict is against the preponderance of the evidence, and thus fails to do justice between the parties," the trial justice should grant the motion for a new trial. Id.
Rule 59 provides that "[a]ny error of law, if prejudicial, is a good ground for a new trial." Votolato v. Merandi, 747 A.2d 455, 460 (R.I. 2000).
 The Defendants' Motion for a New Trial
The Defendants move for a new trial on the grounds that the jury's verdict fails to administer substantial justice between the parties and is against the fair preponderance of the evidence because the verdict was inconsistent. They claim that the jury could not logically find against them on the assault and battery count while finding for them on the counts alleging false imprisonment and intentional infliction of emotional distress. The Plaintiff counters that the fact that the jury found sufficient evidence to establish assault and battery, but insufficient evidence to establish false imprisonment and intentional infliction of emotional distress, does not constitute an inconsistent verdict because each of these four causes of action requires separate and distinct elements of proof.
Assault and battery are separate acts that usually arise out of the same transaction with each having independent significance.Picard, 654 A.2d at 694. As stated briefly above, an assault is a physical act of a threatening nature or an offer of corporal injury that puts an individual in reasonable fear of imminent bodily harm. Id. It is a plaintiff's apprehension of injury that renders a defendant's act compensable. Id. This apprehension must be the type of fear normally aroused in the mind of a reasonable person. Id. Battery, on the other hand, is an act that was intended to cause, and does cause, an offensive contact with or unconsented touching of or trauma on the body of another, thereby generally resulting in the consummation of the assault. Id. An intent to injure is unnecessary in a situation in which a defendant willfully sets in motion a force that in its ordinary course causes the injury. Id.
In order to prevail on a claim for intentional infliction of emotional distress, a plaintiff is required to prove extreme and outrageous conduct that intentionally or recklessly resulted in causing severe emotional distress. Vallinoto v. DiSandro,688 A.2d 830, 838 (R.I. 1997). Furthermore, a plaintiff must prove physical symptomatology resulting from the alleged improper conduct. Id. To establish a cause of action for false imprisonment, a plaintiff must show that (1) the defendant intended to confine him or her, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, (4) the confinement was not otherwise privileged and (5) the plaintiff was detained without legal justification.Dyson v. City of Pawtucket, 670 A.2d 233, 239 (R.I. 1996). Malice is not an essential element of false imprisonment. Id.
In the present case, the Plaintiff presented testimony demonstrating that the Defendants' conduct when he was about to leave the club put him in reasonable fear of bodily harm, constituting assault. Furthermore, it is not disputed that all of the Defendants threw punches that made contact with the Plaintiff, which is sufficient to constitute battery. The Defendants' testimony, on the other hand, shows that the Plaintiff was the aggressor after he got the manager's attention by spitting on the floor. The Defendants also testified that the stature and agility of the Plaintiff, a football player, necessitated that he be restrained with a pronounced show of force when he began to throw punches at them. The force used by the Defendants to overwhelm the Plaintiff was vividly recounted to the jury by all of those involved.
The Defendants' account of the events was convincing. Each of the Defendants was well-spoken, firm, and quite clear as to the events that took place. Together, they offered substantial evidence and provided a single credible picture of the Plaintiff's combative behavior. The Plaintiff, on the other hand, was unimpressive. The Plaintiff's own testimony revealed that he mainly feared what he knew would be his football coach's negative reaction to the Plaintiff's conduct at the club. Rather than consider that his coach might appreciate the fact that he was a victim, the Plaintiff understood that he would likely be scolded by his coach for his conduct. The fact that the Plaintiff did not immediately seek treatment for his alleged injuries bears out this concern. The Plaintiff's witnesses could add nothing to support his account of how the fight began and escalated.
Nonetheless, there was evidence that would lead the jury to find that the Defendants were rougher with the Plaintiff than they needed to be. Each of the Defendants at some point during the scuffle made contact with the Plaintiff in an effort to restrain him. Even assuming that none of the Defendants provoked the Plaintiff's behavior, they each reacted to that behavior in a physical manner, to the degree that a jury could find that the Defendants had committed assault and battery on the Plaintiff. The Plaintiff was not beaten to the point of being injured, as expressed in the jury awarding $0 in compensatory damages, but he was roughed up. The evidence of record shows that reasonable minds could differ on whether the Defendants were rougher than necessary. Accordingly, this Court finds that the verdict in favor of the Plaintiff on the claim of assault and battery must stand
With respect to the claims of infliction of emotional distress, the evidence adduced at trial supports the jury's finding for the Defendants. The record is devoid of evidence suggesting that the Defendants' conduct in subduing the Plaintiff was extreme and outrageous, such as would satisfy a claim of emotional distress. The Plaintiff was a dexterous athlete in excellent condition, and he had an "attitude" that came across during his testimony. Considering the Plaintiff's strength and agility, the jury could have realized that the Defendants would be required to exert a fair amount of their own physical resources to subdue the Plaintiff, particularly considering his agitation just before leaving the club. The Defendants were clear and well-spoken with respect to their duties when club patrons became physically aggressive. The jury could adduce from their testimony that the Defendants acted within the parameters of their job duties. The jury could, and did, find that the evidence supported the claim that the contact with the Plaintiff was inappropriate. Furthermore, even if the jury had found that the contact was extreme and outrageous, the record does not contain evidence that the Plaintiff suffered any requisite physical symptoms resulting from his alleged emotional distress. The only medical records submitted pertain to the bruises and soreness the Plaintiff allegedly received when he tangled with the Defendants. At worst, the Plaintiff was roughed up, but only as a result of his own combative conduct in taking on the Defendants.
With respect to the claim that the Defendants falsely imprisoned the Plaintiff, the jury's verdict is likewise not against the fair preponderance of the evidence. The testimony at trial clearly shows that the Defendants ultimately subdued the Plaintiff during their physical altercation so that his mobility was restrained. It is also clear that the Plaintiff was conscious of this confinement and obviously did not consent to it. The Defendants testified that this confinement was necessary to calm the Plaintiff and to restrain him from doing further harm. The jury could readily conclude that the Defendants were justified in subduing the Plaintiff in this manner, and that this conduct was necessary for them to defend themselves.
However, the trial testimony differs with respect to Plaintiff's freedom of movement when punches were no longer being thrown. The Plaintiff testified that Scungio escorted him to the bathroom to wash up and that Scungio would not allow him to leave the club until about ten to fifteen minutes later. Scungio, however, testified that after the club manager threatened to have the Plaintiff arrested, the Plaintiff stated that he would cooperate and wanted to wash up in the bathroom. Then, according to Scungio, the Plaintiff ran back upstairs to the bathroom. When the Plaintiff had finished washing up in Scungio's presence, he left the bathroom, followed by Scungio, and exited the building through the front door, which the manager had opened for him. Based on this contradictory testimony, reasonable minds could differ on the verdict with respect to false imprisonment. Therefore, the verdict in favor of the Defendants on this claim must stand
The Defendants' argument that the jury verdict was inconsistent is unavailing. Inasmuch as each cause of action requires different elements of proof, this Court finds no inconsistency in the jury's verdict. The verdict form distinctly separates the Defendants and the various causes of action against them. Weighing the evidence and examining the credibility of witnesses, this Court finds that the verdict is not against the fair preponderance of the evidence and that it responds to the merits of the case. damages.
 Punitive Damages without Compensatory Damages
The Defendants next argue that they are entitled to a new trial because the jury could not award punitive damages when they made no award of compensatory damages. They submit that the $12,000 award for punitive damages is excessive and demonstrates that the jury proceeded on a clearly erroneous basis in arriving at its award. They further argue that an award of punitive damages in this case is not justified in light of the evidence presented. The Defendants submit that the evidence shows that they were neither employed by the nightclub nor charged with a crime. Noting that the question is one of first impression in this jurisdiction, the Plaintiff responds that an award of punitive damages is permissible, even in the absence of compensatory damages.
Punitive damages serve to punish the tortfeasor whose wrongful conduct was malicious or intentional and to deter him and others from similar extreme conduct. Palmisano v. Toth, 624 A.2d 314, 317-18 (R.I. 1993) (citations omitted); see also Ross-Simonsof Warwick, Inc. v. Baccarat, Inc., 182 F.R.D. 386 (D.R.I. 1998) (stating that compensation of the victim is not generally a goal of punitive damages). "The standard in Rhode Island for imposing punitive damages is rigorous and will be satisfied only in instances wherein a defendant's conduct requires deterrence and punishment over and above that provided in an award of compensatory damages." Mark v. Congregation Mishkon Tefiloh,745 A.2d 777, 779 (R.I. 2000) (quoting Palmisano, 624 A.2d at 318). Though punitive damages are considered an extraordinary sanction and are disfavored, they will be "permitted if awarded with great caution and within narrow limits." Palmisano, 624 A.2d at 318.
As stated earlier, punitive damages are allowed in tort actions only where the defendant acted maliciously or in bad faith.Carvalho v. Coletta, 457 A.2d 614 (R.I. 1983) (citingBerberian v. New England Tel. Tel. Co., 117 R.I. 629, 634,369 A.2d 1109, 1112 (R.I. 1977)). A party seeking punitive damages "must produce `evidence of such willfulness, recklessness or wickedness, on the part of the party at fault, as amounts to criminality, which for the good of society and warning to the individual, ought to be punished.'" Morin v. Aetna Cas. andSurety Co., 478 A.2d 964, 967 (R.I. 1984) (quoting Sherman v.McDermott, 114 R.I. 107, 109, 329 A.2d 195, 196 (R.I. 1974)). Such willfulness, recklessness or wickedness can be found in torts involving maliciousness, wantonness or willfulness.Sherman, 114 R.I. at 109, 329 A.2d at 196-97. Assault and battery and false imprisonment are torts that involve maliciousness, wantonness, or willfulness and will support an award of punitive damages. Id. at 109, 329 A.2d at 197. Whether the facts in a case are adequate to support an award of punitive damages is a question of law for the trial justice. Palmisano,
624 A.2d at 318; Morin, 478 A.2d at 967. Once the trial justice determines that punitive damages are proper in a case, such an award is discretionary with the trier of fact. Palmisano, 624 A.2d at 318; Sherman, 114 R.I. at 108-109, 329 A.2d at 196.
"The ultimate award of punitive damages as fixed by a jury, however, is not entirely insulated from further scrutiny by the trial justice." Palmisano, 624 A.2d at 318. If an award of punitive damages is excessive or appears to represent the passion and prejudice of the jury rather than their unbiased judgment, then the trial justice may set it aside. Id. In that instance, the trial justice may order a new trial on damages alone, unless the plaintiff agrees to a remittitur. Id. "Additionally the trial justice may review this award as he or she would review an award for pain and suffering and thereby `disregard the jury's verdict on a motion for a new trial if the award "shocks the conscience or clearly demonstrates that the jury . . . proceeded upon a clearly erroneous basis in arriving at its award.'" Id.
(quoting Zarrella v. Robinson, 460 A.2d 415, 418 (R.I. 1983)).
In the present case, the Defendants' conduct toward the Plaintiff does not meet the high, requisite threshold of "`willfulness, recklessness or wickedness'" to support an award of punitive damages. See Sherman, 329 A.2d at 196, 114 R.I. at 109 (citations omitted). Though the jury found that the Defendants' conduct in restraining the Plaintiff constituted assault and battery, such a finding does not necessarily support an award of punitive damages. See Picard, 654 A.2d at 696 (finding defendant did not act with sufficient malice to support an award of punitive damages where defendant committed assault and battery by threatening and pointing his finger at plaintiff and grabbing her shoulder). In the instant case, the imposition of exemplary damages essentially punishes the Defendants for doing their job in restraining an unruly and combative patron. Unlike the situation in Sherman, wherein the plaintiff was held down "helpless" by two officers while he received "a severe beating . . . by one sworn to uphold the law," and there was no evidence of provocation for the plaintiff's attack, there is evidence here that the Plaintiff was the provocateur. The instant Defendants responded to a situation, initially to lessen the harm to themselves, the Plaintiff, and others. Accordingly, the extraordinary sanction of punitive damages is not warranted.
Furthermore, the punitive damages award cannot be allowed to stand in the absence of an award for compensatory damages. Though not having squarely decided the matter, the Rhode Island Supreme Court has stated that punitive damages are allowed only where the "defendant's conduct requires deterrence and punishment over andabove that provided in an award of compensatory damages."Palmisano, 624 A.2d at 318 (emphasis added). "Over and above" is defined as "in addition to." Random House Dictionary of theEnglish Language 1378 (2d ed. 1987). Interpreting the phrase "over and above" according to its plane and clear meaning, this Court determines that an award of compensatory damages is a prerequisite for an award of punitive damages for deterrence and punishment. See also Hargraves v. Ballou, 131 A.2d 643,47 R.I. 186 (1926) (regarding a tort involving malice, wantonness or willfulness, a plaintiff was "entitled to compensatory damages, and the jury, if it saw fit, could add punitive ones"). When reviewing a punitive damage award, our Supreme Court has considered among other factors, the "injury sustained by the plaintiff and the compensatory damages awarded," in one case reducing a $50,000 punitive-damage fee to $10,000 when the compensatory damages totaled only $20, 000. See Minutelli v.Borinian, 668 A.2d 317, 319 (R.I. 1995).
This Court is mindful that "a vast majority of jurisdictions hold that as a predicate for an award of punitive damages, a plaintiff must establish actual injury and be entitled to an award of at least nominal damages." Linda L. Schlueter and Kenneth R. Redden, Punitive Damages, § 6.1(D)(3) (4th ed. 2000). Despite this majority holding, the jurisdictions diverge on whether compensatory damages must be awarded in order for an award of punitive damages to stand Id. at § 6.1(D)(4). Some courts have adopted a restrictive view that a jury must award compensatory damages before awarding punitive damages. Id. at § 6.1(D)(4)(c) (citing a large number of decisions adopting restrictive view). Other courts emphasize the legal injury over the monetary assessment, requiring only that the plaintiff have a valid cause of action for compensatory damages even though compensatory damages are not awarded. Id. at § 6.1(D)(4)(d) (citing a number of decisions adopting the view that mere proof of entitlement to compensatory damages is required); see alsoRoss-Simons of Warwick, Inc., 182 F.R.D. at 401 ("[w]here a plaintiff alleges . . . that the injury caused by the defendant is incapable of calculation, but significant nonetheless, the need for punitive damages is all the more evident"). Under this second view, some courts look to see if the plaintiff presented proof that a compensatory damages award would be justified, while others require the plaintiff to show that he is entitled to punitive damages.
Significantly, the Court of Appeals for the First Circuit has stated that "most punitive damage awards are insupportable if not undergirded by a predicate award of either compensatory or nominal damages." Campos-Orrego v. Rivera, 175 F.3d 89, 97 (1st Cir. 1999) (citing Kerr-Selgas v. American Airlines, Inc.,69 F.3d 1205, 1214 (1st Cir. 1995)). However, the Campos-Orrego
Court went on to instruct that "[s]everal respected courts have ruled persuasively that, as a matter of federal law, a punitive damage award which responds to a finding of a constitutional
breach may endure even though unaccompanied by an award of compensatory damages." Id. (emphasis added) (citations omitted). Indeed, although state law may not allow punitive damages without a compensatory award, under federal law, when a jury finds a constitutional violation under a § 1983 claim, it may award punitive damages without an award of compensatory damages. Basista v. Weir, 340 F.2d 74, 87 (3d Cir. 1965). Similarly, if evidence supports the jury's verdict awarding punitive damages in a sex discrimination suit, those damages will be upheld under 42 U.S.C.S. § 1981(a) even though the jury did not assess compensatory damages. Timm v. Progressive SteelTreating, 137 F.3d 1008, 1010 (7th Cir. 1998). Relying analogously on Basista, the Timm Court found that "no reason comes to mind for reading a compensatory-punitive link into § 1981(a) or Title VII but not § 1983." Id. These holdings affirming punitive damages absent an award of compensatory damages are necessitated by the fact that compensatory damages in constitutional torts, though maliciously inflicted, are sometimes difficult to prove. Carlson v. Green, 446 U.S. 14, 22 n. 9 (1980).
In the present case, the award of punitive damages in a non-constitutional tort action against the Defendants is unsupported by any compensatory damages. An assault and battery committed by three people against one person is a tort for which actual damages should be fairly easily calculated; it is not a tort for which damages are often difficult or impossible to calculate, especially if the plaintiff was diligent prior to trial in obtaining medical evidence. The Plaintiff obviously failed to justify to the jury's satisfaction the reason for his delay in seeking medical treatment. According to his own testimony, he never sought treatment for his injuries after his visit to the Brown University Infirmary, from where the only medical records in this case originated. Furthermore, inasmuch as this case does not involve any constitutional issue that would alone support the jury's finding of punitive damages without compensatory damages, the jury's award of punitive damages must be set aside.
After its review of the evidence, this Court finds that Plaintiff has not met "the high standard" to warrant the "extraordinary sanction" of punitive damages. See Palmisano,
624 A.2d at 318 (citations omitted). The instant punitive damage award, in the absence of compensatory damages and in response to behavior that did not manifest the requisite "willfulness, recklessness, or wickedness," Mark, 745 A.2d at 779 (citations omitted), cannot stand
 Plaintiff's Motion for a New Trial or, Alternatively, Additur
The Plaintiff premises his motion for a new trial by submitting that there would be no basis for granting his motion, or the Defendants' motion for a new trial, if this Court concludes that punitive damages are available despite the absence of compensatory damages. However, he also argues that if this Court concludes that the jury could not award punitive damages in the absence of compensatory damages, then an additur to reflect an award of nominal compensatory damages is appropriate to avoid relitigation. The Plaintiff further argues that he presented sufficient evidence on which the jury could have based an award of at least nominal compensatory damages. It is the Plaintiff's contention that if the jury had received an instruction that alerted it that their efforts to fashion a fair and just verdict would be futile if it awarded $0 in compensatory damages, the jurors would have rendered a totally different verdict.[1]
The Plaintiff argues that the jury intended to punish the Defendants and deter similar behavior and that a modification of the verdict to reflect $1 in compensatory damages and $11,999 in punitive damages effectuates that intent. Defendants object to Plaintiff's motion.
Jury verdicts must "possess a conclusiveness that will preserve the finality of the jury trial as an instrument for doing substantial justice." Jolicoeur Furniture Co., Inc. v.Baldelli, 653 A.2d 740, 754 (R.I. 1995). Judgments are presumed to have been made up after careful deliberation and are not to be disturbed without substantial reason. Id. In order for a judgment entered on a confused, ambiguous, and inconsistent verdict to be altered, a trial justice must be able to say with certainty what the jury meant. Walker v. St. Laurent,103 R.I. 636, 639, 240 A.2d 414, 415 (1968); see also Jolicoeur, 653 A.2d at 754 (citing Krock v. Chroust, 478 A.2d 1376, 1378-80 (Pa. Super. 1984)), in which the court held that it was improper for the trial justice to mold the verdict by deducting work-loss benefits where it was impossible to ascertain from the general verdict whether damages were awarded to compensate work loss or the decedent's pain and suffering.
Additur is a "tool with which a trial justice may conditionally correct and modify a jury award that is found to be excessive or inadequate, such award being against the fair preponderance of the evidence." Cotrona v. Johnson WalesCollege, 501 A.2d 728, 733 (R.I. 1985). Utilizing additur "prevent[s] the burdensome costs, delays, and harassments that accompany relitigation of the same issues while at the same time assuring the litigants substantial justice." Id.
In the present matter, the Plaintiff's version of the chain of events that led to any injuries he sustained was set in motion when he spat on the floor. His contention that he was attempting to extract a particle of food from one of his teeth is not credible. On the other hand, the Defendants' descriptions of the Plaintiff's surliness, bad attitude, and combativeness were credible and compelling. With respect to compensatory damages, the jury could easily determine that the Plaintiff simply was sore. He provided only the medical records from the Brown University Infirmary as evidence of his injuries. There is no evidence that he was treated for his soreness beyond the immediate aftermath of the incident. The Plaintiff's testimony that he received "treatment" for these injuries in the football training room at Brown University every day after the incident until December, 2001, when he graduated, is not worthy of belief. Rather, the Plaintiff's testimony reveals that his overriding concern was what he knew would be his football coach's negative reaction to the Plaintiff's conduct at the club. The Plaintiff understood that he would be in trouble with his coach for his behavior. On the other hand, the Defendants were well-spoken, firm, and quite clear as to the events that transpired.
Accordingly, this Court will not utilize an additur to reflect an award of nominal compensatory damages. After carefully reconsidering the verdict, this Court discerns no substantial reason why the jury's verdict should be disturbed. The jury awarded compensatory damages in response to their assessment of the testimony and other evidence submitted to them. As no evidence has been offered that convinces this Court to disturb the jury's findings, the high standard for adjusting a jury's award has not been satisfied.
 CONCLUSION
For the above reasons, this Court denies Defendants' motions for judgment as a matter of law and for new trial; denies Plaintiff's motion for new trial or additur; and sets aside the punitive damage award. Counsel shall submit the appropriate judgment for entry.
[1] Specifically, the Plaintiff submits that the jury would, in that instance, make an award either for (1) compensable damages of $1 and punitive damages of $12,000 or (2) compensable damages of $0 and punitive damages of $0. The Plaintiff adds that it is not reasonable to believe that the jury was aware that an award of $0 in compensable damages would negate an award of punitive damages, yet proceed to award $0 in compensable damages and $12,000 in punitive damages.